**SHELBY COUNTY, Tennessee,
Petitioner-Appellant,**

v.

**KINGSWAY GREENS OF AMERICA,
INC., Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Oct. 31, 1985.

Application for Permission to Appeal
Denied Jan. 27, 1986.

Brian L. Kuhn, Shelby County Atty., Britton Lamb, Asst. County Atty., Memphis, for petitioner-appellant.

George D. McCrary, Memphis, for defendants-appellees.

CRAWFORD, Judge.

This is a condemnation case appealed by Shelby County, the condemnor. Defendant was the owner of a 140 acre tract of land which was used as a trailer park and a public recreation area with a 30 acre lake. Ingress and egress to defendant's property was from North Watkins Street, a two-lane road prior to the taking which occasioned this suit. In 1977, the county decided to widen North Watkins Street to a four-lane median divided roadway which required the taking of a strip of land 45 feet wide along the existing right of way from defendant. There is no controversy concerning the value of the land taken for the widening of the roadway and the only real dispute on appeal concerns the incidental damages to the land remaining after the taking.

As noted, defendant operated a trailer court and a public lake recreation area. The public entered and exited the property on a two-lane blacktop road that after a distance of some 100 feet forked to provide access to the separate areas defendant operated. Since this driveway accomodated traffic moving in both directions, the vehicles leaving the trailer court and lake area would merge at the fork which was some 100 feet north of the North Watkins entrance. The taking of the additional strip of land caused this distance from the highway entrance to the fork to be shortened considerably which defendant contended created a dangerous traffic condition that needed remedial action. In support of defendant's contention, it presented the expert testimony of Frank Palumbo, an engineer with a great deal of expertise in traffic engineering, who testified in part:

Q. All right. Now, I am going to direct your attention to a point just inside the entrance to the existing park. From a traffic consideration, would you comment on its safety, its advisability? What are the problems, if any, at that location under present conditions?

A. What happened when this occurred is that this original hundred-foot distance has now been cut in less than half, because we only have half of that distance to work these movements, traffic movements into the park. Therefore, this has been shortened significantly, which now creates a problem of ingress and egress to the park, less efficient substantially than it was before the improvement.

Q. Okay. Now, say, for example, if a car was coming out of this northward leg and wanted to go south, and a car was coming out of the southward leg and wanting to go north, is there a place where they can safely cross or get by one another.

A. They have to do it extremely carefully because of the shortening of this distance right here. Simply, if this car is going to weave and go south, and this one is weaving and going north, when you also have this pre-

dicament of stacking up in this neutral area before you can make a left turn, so it gives less opportunity to the cars trying to enter and exit for efficient movements in and out of the park.

Q. All right. Okay. Now, we have talked about cars coming out of the park. Is there a same or similar problem for cars going into the park?

A. It's almost completely the same, but in reverse.

\* \* \* \* \* \*

Q. All right. Now, prior to the widening or the addition of another lane to North Watkins, did Kingsway Greens, its entrance, was it a safe and responsible design, in your opinion?

A. From my knowledge, I think the history of accidents there were rather low. I have no statistics to give you at that point. But it appeared to be a reasonable approach to that two-lane road.

Q. All right. Would you now comment upon the safety and condition of the present circumstance as it now exists?

A. Well, this distance being shortened by less than half has created a confusing—a more confusing circulation problem for ingress and egress to the park.

Q. Is it a safer or equally safe condition as before?

A. No, it's less safer.

Mr. Palumbo then gave his opinion regarding alternative solutions to the problem and continued his testimony:

A. Again, what we are striving for is additional length from the closest traveled lane to give us a better weaving distance in here.

Q. Okay. And would this alternative improve the condition that presently exists there?

A. Without any question.

Q. All right. And would it return it to substantially the same condition of safety that it once had?

A. That was our goal, is to try to provide a similar length in here that was existing prior to this improvement.

Mr. Palumbo's estimate for the alternative proposals was $9,629.70 for one and $11,798.45 for the other. From the judgment on the jury verdict awarding $11,-798.45 as incidental damages, the county has appealed presenting five issues for review which we will now consider.

Issues 1 and 2 will be considered together:

1. Was it prejudicial error to compel plaintiff's appraisers, for no reason, to undergo cross-examination before they had given their evidence in chief.

2. Was it prejudicial error thus to place the burden of proof upon the plaintiff and, for no reason, to reverse the order of proof.

■ The county had retained two appraisers as expert witnesses to testify in its behalf regarding the various property values involved. Over the county's objection, defendant was allowed pursuant to Tenn.R. Civ.P. 43.02 to present these witnesses as the first two witnesses to testify.

Tenn.R.Civ.P. 43.02 provides in pertinent part:

43.02 Examination and Cross-Examination.—A party may interrogate any unwilling or hostile witness by leading questions. Except as otherwise provided by this rule, the cross-examination of a witness shall not be limited to the subject matter of his examination in chief. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership, association or individual proprietorship which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and im-

peached by or on behalf of the adverse party also and may be cross-examined by the adverse party but only upon the subject matter of his examination in chief. Clearly the two appraisers were not adverse parties within the contemplation of the rule. We note also that the witnesses or at least counsel for the county should have objected to the trial court's allowing the defendant to present these witnesses since the county had hired them as expert witnesses. Obviously, one who becomes an expert witness for the purposes of litigation does so by voluntary acts based upon an agreement or understanding with the party litigant hiring his services. The obligation to be an expert witness is created by the witness himself pursuant to an agreement with the person requiring and paying for his services. Thus the obligation of an expert to testify is necessarily distinguishable from the testimonial obligation of an ordinary citizen who happened to be a witness to an occurrence or event. The witnesses in the case before us had no contractual obligation to testify for the defendant and this objection should have been voiced.

■ We see no need to further discuss various obligations and responsibilities concerning the field of expert witness testimony because contrary to the county's assertion we find that the burden of proof was not changed nor do we find that the court's action prejudiced the county in any manner. The county was allowed to present the same two witnesses as part of its proof in chief and the record reveals that their testimony on behalf of the county was in no way diminished by their previous testimony. Counsel did not seek to elicit from these witnesses any testimony regarding incidental damages although their written appraisals introduced as exhibits indicate no allocation for such damages. The trial judge expressly instructed the jury that the burden of proof was on the landowner to prove the damages. While the procedure followed was not correct, we cannot find that such action "more probably than not affected the judgment or would result in prejudice to the judicial process." T.R.A.P. 36(b).

We pretermit consideration of Issue No. 3 as it is concerned only with the value of the land taken and the county does not complain about the jury's assessment of damages in this regard.

Issues Nos. 4 and 5 will be considered together:

4. Was it error to instruct the jury differently when it asked for instructions than the Court did in its original instructions?

5. Was it prejudicial error for the Court to instruct the jury, upon the second occasion, that, "Redesigning the site so it could be put back in operation as is so desired, and to repave the ground from which it was done is also an element of damages?"

In its initial charge the court charged the jury concerning incidental damages as follows:

Now I am going to charge you on incidental damages. Now, this is what they have not agreed upon, and I want you to listen carefully to this and this is what you will have to decide, ladies and gentlemen.

Now, in reference to incidental damages, the property owner is entitled to recover just compensation for the incidental damages resulting to the remainder of the whole tract that is not taken in this proceeding by the State of Tennessee—I mean, the County of Shelby. If any such damage results by reason of the taking of a part of it, incidental damages, ladies and gentlemen of the jury, are defined as damages to the land not taken as distinguished from compensation for the land that is taken.

The incidental damages to remainder of the land not taken which may be awarded in this case are such pecuniary damages to or reduction of its fair cash market value as naturally, directly, and proximately result from and are produced by the actual taking of a part of the whole tract of land, and by the construction and operation and maintenance over and upon the part of the land as actually

taken, assuming, as you will and must, that the same will not be constructed or operated or maintained negligently or carelessly.

But you will assume that the herein-described improvements will be constructed and operated and maintained with reasonable and ordinary care, that is, such care as would be expected of one of ordinary prudence under all the then-existing and surrounding circumstances.

In determining whether or not the land not taken has been damaged, and if so, to what extent, you may take into consideration the location of the property that is not taken and to what uses the property might have been put just prior to the taking. You may take into consideration the size and shape or shapes in which the remaining parcel or parcels of land are left, and whether or not the parcels can be used to their utmost advantages, and in limited usage, if any, to which the remainder may be devoted subsequently as a result of such taking.

If you find there has been no damage to nor depreciation to the remainder of the property not taken in this proceeding, then, of course, you will not be concerned with what I have said about incidental damages.

During deliberations the jury requested reinstruction concerning incidental damages. The court repeated the instructions above-quoted and at the insistence of the defendant charged the jury further as follows:

And I charge you that the damage to the remaining land found, redesigning the site so it could be put back in operation as is so desired, and to repave the ground from which it was done is also an element of damages.

Now, if you find there has been no damage or depreciation to the remainder of the property taken or no expense to put the property back like it was, then you will not concern yourself with incidental damages.

The county contends that this additional language of the charge expressly instructs the jury that it may return a verdict for damages based upon the "cost to cure" effect of the taking and that it is an improper measure of damages under our law.

 T.C.A. § 29–16–114 (1980) and T.C.A. § 29–17–810 (1980) provide for the award of incidental damages in eminent domain proceedings. These damages include among other things those relating to the part of the land remaining to the landowner after a part of his land has been taken. *State v. Parkes*, 557 S.W.2d 504 (Tenn.App.1977). The proper measure of damages to land remaining after a partial taking is the decline in the fair market value of the property by virtue of the taking. *State v. Parkes, supra* at 507; *City of Memphis v. Hood*, 208 Tenn. 319, 345 S.W.2d 887 (1961). In *Tate v. County of Monroe*, 578 S.W.2d 642 (Tenn.App.1978), the court held that the testimony concerning the dangerous and hazardous nature of the property owner's only means of ingress and egress was proper as to the effect it might have on the property value. The court said:

Evidence which would tend to show that a newly constructed access enhanced the property value is admissible. So is evidence, such as that presented here, which shows the access to be difficult and hazardous and, therefore, *adversely affects the property value.* (Emphasis supplied).

*Id.* at 645.

 In the case before us the evidence concerning the cost of reworking the entrance way to defendant's property was an element to be considered by the jury in determining the diminution in value and the court should have so instructed the jury. However, the instruction to the jury is to the effect that the jury was to consider the cost of the corrective action as a measure of damages in addition to damages awardable for diminution in value. While the "cost to cure" is an element to be considered in determining diminution of value, "cost to cure" is not the proper measure of damages for the land remaining after a taking. The record in this case is lacking

in any proof concerning the value of the defendant's remaining land before and after the taking. The amount awarded by the jury is the exact amount as Mr. Palumbo's estimate of the cost of constructing one of his alternative proposals for providing safe ingress and egress to defendant's property. Since there is no proof in the record concerning the proper measure of damages, i.e. diminution in value of defendant's property, the evidence cannot support a verdict for incidental damages.

The county has asked that this case be remanded for a new trial on the amount of incidental damages due the defendant. We grant this request.

Accordingly, we affirm the judgment of the trial court in all respects except as to the jury's award of incidental damages. The judgment of the trial court is reversed on the award of incidental damages and this case is remanded for a new trial consistent with this opinion on the issue of incidental damages only. Costs are adjudged against appellee.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.