IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 1999 Session

## TENNESSEE DEPARTMENT OF TRANSPORTATION v. JOHN H. WHEELER, SR., ET AL.

**Appeal from the Circuit Court for Sequatchie County**
**No. 4086      Buddy D. Perry, Judge**

---

**No. M1999-00088-COA-R3-CV - Filed October 11, 2002**

---

This appeal involves a dispute between a farmer and the Department of Transportation arising from the Department's condemnation of a portion of his farm for a new highway and bridge. The parties agreed on the fair market value of the property taken but disagreed on the amount of incidental damages to the remaining property. Following a trial in the Circuit Court for Sequatchie County, a jury awarded the farm owner $200,000 in incidental damages. The Department asserts on this appeal (1) that there is no evidence that the remaining property suffered incidental damages, (2) that the trial court erred by permitting an unlicensed real estate appraiser to offer an expert opinion regarding the value of the remaining property, and (3) that the evidence does not support the jury's damage award. While we have determined that the trial court erred by admitting the opinion testimony of the unlicensed appraiser, we have determined that this error did not affect the judgment and that the evidence supports the jury's decision regarding the existence and amount of incidental damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Paul G. Summers, Attorney General and Reporter, and William E. James, Senior Counsel, Chattanooga, Tennessee, for the appellant, Tennessee Department of Transportation.

L. Thomas Austin, Dunlap, Tennessee, for the appellees, John H. Wheeler, Sr., Nona C. Wheeler, Sally F. Wheeler, Nicholas L. Wheeler, Janna L. Wheeler Robbs, Jack M. Wheeler, Cindy A. Wheeler, Thurman Davis, Elise Davis, Thurston Davis, and Aline Davis.

## OPINION

### I.

In November 1979, John and Nona Wheeler bought a 332-acre farm adjacent to Brush Creek in northern Sequatchie County. Mr. Wheeler, a life-long farmer, row cropped the land, raising corn, soybeans, and wheat. In October 1983, the Tennessee Department of Transportation filed a condemnation proceeding in the Circuit Court for Sequatchie County seeking to condemn 12.886

acres of the Wheelers' farm to construct a two-lane highway referred to as "Corridor J."[1] The tract taken by the Department effectively bisected the Wheelers' farm. One 86.09-acre tract was north of Corridor J, and two separate tracts totaling 233 acres were south of Corridor J.[2]

The portion of the Corridor J project affecting the Wheelers' farm involved not only the construction of a portion of the two-lane, restricted access undivided highway but also the construction of a 132-foot bridge spanning Brush Creek and the condemned property. In addition to the road and bridge, the Department constructed several other improvements to facilitate drainage from one side of the road to another, including a triple box culvert and a thirty-inch pipe beneath the new road.

The damages portion of the condemnation proceedings was not tried until May 1998, after the construction project had been completed. At issue in this proceeding were the fair market value of the 12.886 acres that were actually taken and the amount of incidental damages to the remainder of the Wheelers' farm. The parties stipulated at trial that the fair market value of the property actually taken was $18,040; however, they were unable to agree on whether the remainder of the property had been incidentally damaged and, if so, how much these damages were.

The Department insisted that the Wheelers' farm was low-lying bottom land located in a flood plain and that the property had been subject to frequent flooding and the deposit of rock, sand, and gravel before the construction of the road and bridge. It asserted that the construction of the road and bridge had caused little additional damage to the Wheelers' farm, although it conceded (1) that the road and bridge caused the water to rise to a great depth on ten acres of the property to the north of the road and (2) that the improvements slightly increased the velocity of the water downstream from the bridge for approximately thirty feet beyond the right of way. The Department argued that the project had caused $5,250 in damages to the Wheelers' remaining property.

The Wheelers' assessment of their incidental damages differed significantly from the State's. They insisted that their property did not flood very often prior to the construction of the road and bridge and that the flooding was gentle when Brush Creek overran its banks. They asserted that the construction of the road and bridge had created a dam effect on Brush Creek causing more frequent flooding. They also asserted that the road improvements caused raging flood waters that deposited large quantities of stones, sand, and gravel on their property and that the bifurcation of their farm had caused them significant severance damages. To support their claims, the Wheelers introduced photographs and a videotape recording depicting the effects of four separate flooding incidents occurring after the completion of the road and bridge. Mr. Wheeler testified that the effects of the construction of the road and bridge had substantially decreased the farm's value by $200,970 to $233,000.

---

[1]The Department's condemnation petition named other members of the Wheelers' family as defendants because they had a property interest in the farm. For the sake of convenience, we will refer to John and Nona Wheeler as the owners of the property.

[2]One of the two tracts south of Corridor J was a 1ａ-acre, triangular piece of property.

A jury returned a verdict awarding the Wheelers' $18,040 for the 12.886 acres of property actually taken and $200,000 in incidental damages. The trial court approved the verdict after denying the Department's motion for a new trial or, in the alternative, for a remittitur. On this appeal, the Department insists that the verdict must be vacated because the trial court erred by permitting the Wheelers to present inadmissible expert opinion evidence regarding the effect of the construction of the road and bridge on the value of their property. The Department also asserts that the record contains no "material or credible" evidence of incidental damages to the Wheelers' property and that the amount of the verdict was so excessive that it reflects the jury's passion, prejudice, and caprice.

## II.
### THE ADMISSIBILITY OF THE WHEELERS' EXPERT'S VALUATION OPINION

The Wheelers' proof consisted of the testimony of three persons in addition to Mr. Wheeler himself. One of these witnesses was Jerry Harris, the real estate broker who handled the sale of the property to the Wheelers in 1979. Sometime after this condemnation proceeding began in November 1983, Mr. Harris moved away from Tennessee and allowed his Tennessee license as a real estate broker to lapse. The Wheelers proposed to call Mr. Harris not only as a fact witness but also to render an expert opinion regarding the effect of the construction of the road and bridge on the value of the Wheelers' remaining property.

The Department objected to allowing Mr. Harris to give a valuation opinion on the ground that state law permitted only certified real estate appraisers and licensed real estate brokers to appraise the value of real property in Tennessee. The Department insisted that Mr. Harris was not competent to render a valuation opinion because he was not licensed in Tennessee as a real estate broker at the time of trial. The Wheelers responded that Tenn. R. Evid. 702 effectively trumped the statutory licensure requirement and that Mr. Harris qualified as an expert based on his knowledge, skill, experience, and education. The trial court overruled the Department's objection, reasoning that Mr. Harris was competent to give an expert valuation opinion because he had been a licensed real estate broker in Tennessee in 1983 when the condemnation proceeding was filed.

The Wheelers do not take issue with the Department's argument on appeal that Tennessee statutes prohibit persons who are not licensed either as a certified real estate appraiser or as a real estate broker to give an opinion regarding the value of real property located in Tennessee.[3] However, they insist that Tenn. R. Evid. 702 supercedes these statutes and permits trial courts, in their discretion, to permit non-licensed persons to give a valuation opinion as along as they demonstrate that they are qualified to do so based on their knowledge, skill, experience, training, or education. To support their position, they cite decisions from Mississippi and West Virginia upholding a trial court's decision to permit unlicensed persons to testify as expert appraisers. *Watts v. Lawrence*, 703 So. 2d 236 (Miss. 1997); *Teter v. Old Colony Co.*, 441 S.E.2d 728 (W. Va. 1994).

---

[3]The Department bases its argument on Tenn. Code Ann. § 62-39-103(a) (1997) which provides, in part, that "[e]xcept as provided in § 62-39-104 . . . it is unlawful for anyone to solicit an appraisal assignment, or prepare an appraisal or an appraisal report relating to real estate or real property in this state, without first obtaining a real estate appraiser's license or certificate." According to the state, the only exception to this restriction is Tenn. Code Ann. § 62-39-335 (1997), which permits licensed real estate brokers to testify as expert witnesses regarding the value of property.

The decisions of the courts in Mississippi and West Virginia are not relevant to Tennessee proceedings because the relationship between the rules of evidence and contrary statutory requirements in these two states differs from the relationship between the Tennessee Rules of Evidence and contrary statutory provisions. In both Mississippi and West Virginia, the rules of evidence control over conflicting statutory requirements. Miss. R. Evid. 1103; W. Va. R. Evid. 101; *Whitehurst v. State*, 540 So. 2d 1319, 1323-24 (Miss. 1989); *State v. Derr*, 451 S.E.2d 731, 743 (W. Va. 1994). In Tennessee, however, statutory requirements control over the Tennessee Rules of Evidence. Tenn. R. Evid. 101 clearly states that "[t]hese rules shall govern evidence rulings in all trial courts of Tennessee except as otherwise provided by statute or rules of the Supreme Court of Tennessee."

Applying Tennessee law, as we must, we conclude that persons seeking to give an expert opinion regarding the value of real property located in Tennessee must meet both the specific statutory requirements of Tenn. Code Ann. § 62-39-103(a) and the general requirements of Tenn. R. Evid. 702 at the time they are called upon to testify regarding their expert opinion. Accordingly, the trial court erred by permitting Mr. Harris to give an expert opinion regarding the value of the Wheelers' farm because Mr. Harris was no longer a licensed real estate broker when he testified.

Concluding that the trial court erred by permitting Mr. Harris to give a valuation opinion does not necessarily end the matter. Not every erroneous admission of evidence requires reversal. A final judgment should be set aside only when the error more probably than not affected the judgment. Tenn. R. App. P. 36(b); *State v. Hampton*, 24 S.W.3d 823, 830 (Tenn. Crim. App. 2000); *Keith v. Murfreesboro Livestock Market*, 780 S.W.2d 751, 758 (Tenn. Ct. App. 1989). Whether an error in admitting evidence is sufficiently prejudicial to require reversal depends on the evidence's substance, its relation to other evidence, and each case's peculiar facts. *Blankenship v. State*, 219 Tenn. 355, 360, 410 S.W.2d 159, 161 (1966). As we will discuss in our analysis of the evidentiary support for the jury's assessment of the amount of the Wheelers' incidental damages, we have concluded that the erroneous admission of Mr. Harris's valuation opinion, more probably than not, had negligible effect on the jury's assessment of incidental damages in this case.

## III.
### EVIDENTIARY SUPPORT FOR THE EXISTENCE OF INCIDENTAL DAMAGES

The Department argues that the record contains no credible material evidence that the construction of the road and bridge caused flood-related damage to the Wheelers' remaining property on the south side of the new road.[4] It insists that this court should now discount the Wheelers' evidence regarding the flooding on their property south of the new road because it is inherently improbable and is "absolutely at variance with well-established and universally recognized physical laws." While the Wheelers' evidence regarding flooding is certainly at odds with the testimony of the Department's engineer, we do not find it to be impossible or palpably improbable.

---

[4]Despite its original assertion that the record contains no material evidence to support the Wheelers' claim for incidental damages to their property on either the north or south side of the road, the Department appears to concede in its brief that "the Defendants' [the Wheelers'] theory may not be implausible as to the road holding back flood waters on the north side of the farm . . .." In light of this concession, we will focus our attention on the evidence regarding the effect of the new road and bridge on the Wheelers' property lying south of the road.

**A.**

When reviewing the evidentiary foundation of a jury's verdict, our task under Tenn. R. App. P. 13(d) is to review the record to determine whether it contains any material evidence to support the jury's verdict. We do not re-weigh the evidence. *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d 698, 704 (Tenn. 2000); *Ross v. Vanderbilt Univ. Med. Ctr.,* 27 S.W.3d 523, 530 (Tenn. Ct. App. 2000). Rather, we take the strongest legitimate view of the evidence that favors the verdict, *Mills v. Solomon,* 43 S.W.3d 503, 507-08 (Tenn. Ct. App. 2000); *Woods v. Herman Walldorf & Co.,* 26 S.W.3d 868, 874 (Tenn. Ct. App. 1999), and we affirm the verdict if the record contains any material evidence to support it. *Next Generation, Inc. v. Wal-Mart, Inc.,* 49 S.W.3d 860, 863 (Tenn. Ct. App. 2000).

When we use Tenn. R. App. P. 13(d) to examine the record of a jury trial, we must keep in mind that the responsibility for assessing the weight, faith, and credibility to be given the witnesses lies with the trier-of-fact and that the trier-of-fact's decisions on these matters must be given great weight on appeal. *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Kim v. Boucher,* 55 S.W.3d 551, 555 (Tenn. Ct. App. 2001); *Kinnard v. Taylor,* 39 S.W.3d 120, 122 (Tenn. Ct. App. 2000). Accordingly, we will neither re-evaluate the witnesses' credibility on appeal, *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822, 823 (Tenn. 1994); *Grissom v. Metropolitan Gov't,* 817 S.W.2d 679, 684 (Tenn. Ct. App. 1991), nor will we analyze the conflicting evidence to determine where the truth lies. *D.M. Rose & Co. v. Snyder,* 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947); *Goodman v. Balthrop Constr. Co.,* 626 S.W.2d 21, 24 (Tenn. Ct. App. 1981).

Despite Tenn. R. App. P. 13(d)'s deferential standard for reviewing the factual foundation of a jury's verdict, the appellate courts are not required to "passively sit by and allow patently impossible, incoherent, or perjured testimony to support a jury verdict." *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38, 41 (Tenn. Ct. App. 1975). Evidence is "material" for the purposes of Tenn. R. App. P. 13(d) only if it is credible. Thus, when assaying the evidentiary support for a jury's verdict, the appellate courts may disregard testimony that cannot possibly be true, that is inherently unbelievable, or that is opposed to natural laws. *Gilbreath v. Herring*, No. 02A01-9311-CV-00239, 1994 WL 591766, at *4 (Tenn. Ct. App. Oct. 31, 1994) (No Tenn. R. App. P. 11 application filed); *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 483 (Tenn. Ct. App. 1978).

Testimony that is entirely inconsistent with undisputed physical facts is one variety of evidence that appellate courts may disregard. *McCray v. Hughes*, 53 Tenn. App. 533, 538, 385 S.W.2d 124, 126 (1964); *Gordon's Transps., Inc. v. Bailey*, 41 Tenn. App. 365, 402, 294 S.W.2d 313, 330 (1956). However, while this "physical facts rule" may be invoked in both criminal and civil proceedings, it should be used with great caution because of the risk of invading the province of the jury. *State v. Hornsby*, 858 S.W.2d 892, 895 (Tenn. 1993). Under the physical facts rule, challenged testimony may be disregarded only when it is inconsistent with "well-established and universally recognized laws," *State v. Radley*, 29 S.W.3d 532, 535 n.4 (Tenn. Crim. App. 1999); *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d at 483, and when it is "inherently improbable and impossible of belief." *State v. Hornsby*, 858 S.W.2d at 895; *Nashville, Chattanooga & St. Louis R.R. v. Justice*, 5 Tenn. Civ. App. 69, 71 (1914) (holding that appellate courts may disregard impossible or palpably improbable testimony).

**B.**

The Department asserts that we should invoke the physical facts rule to disregard the testimony presented by the Wheelers. As best we can determine, the well-established and universally recognized laws on which the Department relies consist of the "common knowledge that creeks forming in mountains and descending into valleys may, during periods of heavy rain, become prone to flood and spill out onto lowlands. This is especially so in the winter and spring, as in this case." Even if we were to treat the possibility that mountain streams might overflow their banks during periods of heavy rain as a "well-established and universally recognized physical law," we do not find the testimony offered by the Wheelers regarding the flooding of their property to be entirely inconsistent with this proposition.

The Wheelers did not argue at trial that Brush Creek never flooded their property before the construction of the road and bridge. Their argument was simply that the construction of the road and bridge caused their property to be more prone to flooding. They also argued that the velocity of the flood waters is greater than it had been in the past and that increased force of the flood waters has resulted in increased damage to their property. Their evidence supporting these claims is not completely inconsistent with any sort of natural law regarding the behavior of mountain streams and, accordingly, we decline to invoke the physical facts rule to disregard it.

The Wheelers presented eyewitness accounts, photographs, and a videotape recording of the flooding both upstream and downstream of the new road and bridge along with expert testimony regarding the increased velocity of the water caused by the construction. This evidence showed flood waters eight to nine feet high covering the property north of the road that had washed away an existing tree line. It also showed how the damming effect of the road and bridge cause the water on the north side of the road to run across the north side of the property, down the road, and onto the property on the south side of the road. The evidence also showed how the high water had pushed debris consisting of rocks and pavement from the road through the box culvert and onto the property south of the road. All this evidence regarding the flooding of the Wheelers' property and the effects of the flooding was relevant to the Wheelers' claim for incidental damages and provided the jury with material evidence upon which to base its verdict.

In addition to the evidence regarding the flooding, the Wheelers presented material evidence regarding the severance damage to their farm. Before the construction of the road, their farm was a contiguous tract of land. Mr. Wheeler testified that working the farm was more difficult after the road bisected it into two tracts. He explained how he was required to leave his property and travel down the new road to reach the rest of his property. He also described how he was required to drill a new well to serve the property north of the new road because the spring he had used prior to the construction of the road was on the property south of the road. This evidence, like the evidence regarding the flooding, provided the jury with a satisfactory evidentiary basis for awarding incidental damages.

# IV.
## THE AMOUNT OF THE INCIDENTAL DAMAGE AWARD

Finally, the Department takes issue with the amount of the jury's verdict. It asserts that the $200,000 award of incidental damages is so excessive that it reflects the jury's passion, prejudice, and caprice. After considering the record as a whole, we have determined that the admission of the valuation evidence offered by the real estate broker who was no longer licensed in Tennessee, more probably than not, did not influence the amount of the incidental damage award. After disregarding this evidence, we have determined that the incidental damage award is within the range of reasonableness established by the competent evidence.

## A.

The proper measure of incidental damages to a remaining tract of real property following a partial taking is the decline in the fair market value of the remaining property caused by the taking. *City of Memphis v. Hood*, 208 Tenn. 319, 327, 345 S.W.2d 887, 891 (1961); *Shelby County v. Kingsway Greens of Am., Inc.*, 706 S.W.2d 634, 638 (Tenn. Ct. App. 1985). The amount of incidental damages to be awarded is a jury question, and unless the award is "shown to be wholly unfair and unreasonable," it will not be disturbed on appeal. *Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 202 Tenn. 9, 22, 301 S.W.2d 905, 911 (1957). In condemnation cases, as in other civil cases, we must take the strongest legitimate view of the evidence favoring the prevailing party, discarding the contrary evidence, and allow all reasonable inferences to uphold the jury's verdict. *Smith County v. Eatherly*, 820 S.W.2d 366, 369 (Tenn. Ct. App. 1991).

Damage awards in condemnation cases cannot outstrip the evidence. The amount of these awards must be based on the evidence presented and cannot be the result of the jury's passion, prejudice, or caprice. *Shelby County v. Mid-South Title Co.*, 615 S.W.2d 677, 680-81 (Tenn. Ct. App. 1980); *State ex rel. Shaw v. Shofner*, 573 S.W.2d 169, 174 (Tenn. Ct. App. 1978). Accordingly, appellate courts will decline to affirm a damage award that is beyond any reasonable view of the evidence. *Magness v. B. Hitt Elec. Co.*, 604 S.W.2d 44, 46 (Tenn. 1980). However, when the credible evidence establishes a "range of reasonableness"[5] for the damages in a jury case, the appellate courts will not disturb a jury's damage award if it falls within the range of reasonableness because "it is the exclusive province of the jury to assess damages within the range of reasonableness established by the credible proof. *Smith v. Shelton*, 569 S.W.2d 421, 427 (Tenn. 1978).

## B.

Three witnesses testified about the diminished fair market value of the Wheelers' remaining property. Mr. Wheeler testified that the value of his farm had decreased by 45 to 50% which amounted to monetary damages between $200,900 and $223,379. The Department's appraiser

---

[5]As far as monetary damages are concerned, the "range of reasonableness" is the range of damages between the upper and lower limits established by the evidence. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 126 (Tenn. 1980).

placed the monetary value of the incidental damages to the Wheelers' remaining property at $5,250.[6] The third witness, the real estate broker whose Tennessee license had lapsed, testified that the construction had diminished the value of the Wheelers' remaining property by 40% or approximately $178,073.

We have already concluded in Section II that the trial court should not have permitted the unlicensed real estate agent to give an opinion regarding the effect of the construction project on the value of the Wheelers' remaining property. Accordingly, this testimony must be completely disregarded and cannot be used to establish the range of reasonableness with regard to the incidental damages. Because this witness's testimony regarding the amount of the incidental damages was less than Mr. Wheeler's calculation of the incidental damages, we conclude that the erroneously admitted testimony, more probably than not, did not influence the jury's calculation of the incidental damages.

The competent evidence regarding the measure of the Wheelers' incidental damages ranged from $5,250 to $223,379. The jury obviously accredited Mr. Wheeler's testimony regarding the damage to his remaining property because it used a rounded down version of his lower estimate to set the Wheelers' damages. Mr. Wheeler's testimony was buttressed by dramatic photographic and videotaped evidence of post-construction flooding on the property. Barring an error of law, a jury's award of incidental damages that falls within the range of reasonableness established by the evidence will not be set aside on appeal. In light of Mr. Wheeler's testimony regarding the decline in the fair market value of his own property, we find that the jury's decision to award the Wheelers $200,000 in incidental damages is supported by material evidence and does not reflect that passion, prejudice, or caprice on the jury's part.

## V.

For the reasons stated herein, we affirm the judgment awarding the Wheelers $197, 840 in addition to the funds the Department had already paid into court and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[6]The appraiser stated that increased flooding on ten acres of the tract north of the new road had decreased the value of that tract by $4,200 and quantified the severance damage at $1,050.