IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 19, 2013 Session

# STATE OF TENNESSEE ON RELATION OF THE COMMISSIONER OF THE DEPARTMENT OF TRANSPORTATION v. RICHARDSON LUMBER COMPANY, ET AL.

**Appeal from the Circuit Court for Humphreys County**
**No. 9104      Larry J. Wallace, Judge**

---

**No. M2012-02092-COA-R3-CV - Filed April 16, 2014**

---

This is a condemnation case in which the State of Tennessee Department of Transportation acquired 20.93 acres of a 46.813 parcel of land by eminent domain for the purpose of constructing a highway. The jury awarded the landowner money for the value of the land acquired, the improvements on the land (including interior roads and culverts), and incidental damages to the remainder of the property not acquired by the State. The trial court suggested an additur and also awarded the landowner discretionary costs. The State appeals the trial court's award of an additur and discretionary costs. We have determined that the evidence does not preponderate against the trial court's suggestion of additur on the issues of incidental damages and interior roads; however, we find the evidence preponderates against the court's additur with respect to culverts. We also find the trial court erred in assessing discretionary costs against the State.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Mary S. Foust, Senior Counsel; for the appellant, State of Tennessee.

Robert I. Thomason, Jr. And Mark C. Odle, Waverly, Tennessee, Tennessee, for the appellee, Richardson Lumber.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

This appeal arises from an eminent domain proceeding brought by the State of Tennessee on relation of the Commissioner of the Department of Transportation ("the State") seeking to obtain title to 20.93 acres of an approximately 46.813 acre parcel of property owned by Richardson Lumber Company ("Richardson").[1] The acquisition of the 20.93 acres was necessary for the construction of a state highway project in Humphreys County. Richardson primarily used the land in the acquisition area for cutting timber. To that end, there were interior roads[2] on the property that were useful in hauling timber from the property.

An appraiser engaged by the State valued Richardson's property at $18,150.00, and the State tendered that amount with the court following commencement of the action. On May 2, 2003, the trial court entered an agreed order of possession and a consent order of disbursement, which authorized disbursement of the $18,150.00 to Richardson. The court reserved the issue of compensation for a jury trial.

A jury trial was held on April 23 and 24, 2012 at which ten witnesses testified. At the conclusion of trial, the jury awarded Richardson a total of $31,226.00. The award was calculated as follows: "$26,129.00 for the 20.93 acres taken, $358.00 for two culverts, six hours of bulldozer work totaling $1500.00 for the roads, and ten percent or $3239.00 for incidental damages to the remainder of the land not taken."[3] On June 20, 2012, the state tendered $20,612.61 to Richardson representing the difference between the original tender of $18,150.00 and the jury award of $31,226.00, plus accrued interest of $7536.61. Richardson filed a motion for new trial or additur and a motion for discretionary costs on July 5, 2012.

The trial court held a hearing on Richardson's post trial motions on August 6, 2012 and, by orders entered September 6, the court held that the jury verdict was outside the range of reasonableness and did not adequately compensate Richardson for the taking of the

---

[1] Richardson retained approximately 26 acres of the property.

[2] These roads were variously described as "skidder roads," timber trails," and "dirt roads" throughout the testimony at trial.

[3] There was no jury verdict form used; rather, the foreman of the jury announced the verdict. Judgment was entered by the trial court on June 4, 2012, in accordance with the jury's verdict.

property. The court suggested an additur in the amount of $12,052.00[4] and awarded discretionary costs (for court reporter expenses and expert witness fees) in the amount of $9107.00. The court calculated the additur as follows: three times the amount awarded for the diminished value of the remaining property ($9717.00), four times the amount of bulldozer work ($6000.00), and four times the cost of culverts to connect the interior roads ($1432.00).

On September 7, 2012, the State accepted the suggested additur under protest. The State appeals the trial court's decision to award an additur.

STANDARD OF REVIEW

While the calculation of damages is primarily the role of the jury, the trial court has authority to adjust damage awards to "accomplish justice between the parties and to avoid the time and expense of a new trial." *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990); *see also* Tenn. Code Ann. § 20-10-101(a)(1). Tennessee Code Annotated section 20-10-101(b)(2) provides that our review of a trial court's decision to suggest an additur is conducted pursuant to Tenn. R. App. P. 13(d). Under Tenn. R. App. P. 13(d), we review the trial court's decision de novo upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Thus, we must "review the proof of damages to determine whether the evidence preponderates against the trial court's suggestion of additur." *Phillips v. Perot*, No. 02A01-9704-CV-00094, 1998 WL 117325, at *2 (Tenn. Ct. App. Mar. 17, 1998). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

If the additur is supported by the evidence presented at trial, we then consider two additional factors to determine whether the trial court acted properly in suggesting the additur:

> First, we examine the reasons for the trial court's action because adjustments are proper only when the court disagrees with the amount of the verdict. *Burlison v. Rose*, 701 S.W.2d 609, 611 (Tenn. 1985); *Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 385 (Tenn. Ct. App. 2006). Second, we examine the amount of the suggested adjustment because adjustments that "totally destroy" the jury's verdict are impermissible. *Foster v. Amcon Int'l,*

---

[4] The $12,052.00 additur is the net increase in compensation after deducting the jury's previous award of incidental damages, interior roads, and culverts ($5097.00) from the actual adjustment ($17,149.00) suggested by the trial court.

*Inc.*, 621 S.W.2d 142, 148 (Tenn. 1981); *Bain v. Simpson*, No. M2001-00088-COA-R3-CV, 2002 WL 3600320, at *3 (Tenn. Ct. App. Mar. 7, 2002) (No Tenn. R. App. P. 11 application filed); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986).

*Hindman v. Doe*, 241 S.W.3d 464, 471 (Tenn. Ct. App. 2007); *see also McKinney v. Smith Cnty.*, No. M1998-00074-COA-R3-CV, 1999 WL 1000887, at *4 (Tenn. Ct. App. Nov. 5, 1999).

ANALYSIS

Article one, section twenty-one of the Tennessee Constitution, provides, "[t]hat no man's particular services shall be demanded, or property taken, or applied to public use, without . . . just compensation being made therefor." In estimating just compensation for property taken, the Legislature has directed that "the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages." Tenn. Code Ann. § 29-16-114(a)(1). Therefore, in an eminent domain proceeding, the court is required to "ascertain and award 'just compensation' to the landowner, an amount consisting of the value of the land or rights taken and any incidental damages less any benefits resulting from any improvement." *Water Auth. of Dickson Cnty. v. Hooper*, No. M2009-01548-COA-R3-CV, 2010 WL 1712968, at *4 (Tenn. Ct. App. Apr. 29, 2010) (citing *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn. 1978)). Incidental damages include where the State's taking has adversely affected the remainder of the property. *Shelby Cnty. v. Kingsway Greens of Am, Inc.*, 706 S.W.2d 634, 638 (Tenn. Ct. App. 1985). The proper measure of incidental damages in an eminent domain action is "the decline in the fair market value of the property by virtue of the taking." *Id.*

Incidental damages are appropriate in cases "where access to and utility of the remaining property has been impaired by the taking of part of the property, which has caused a loss of fair market value in the remainder." *Pun Wun Chan v. State*, No. E2005-01391-COA-R3-CV, 2006 WL 1233053, at *3 (Tenn. Ct. App. May 9, 2006). Factors that may be considered in determining whether it is appropriate to award incidental damages in an eminent domain proceeding include "the loss of use of the property for any lawful purpose, any unsightliness of the property or inconvenience in its use, any impairment to the owner's access to nearby streets and highways and any other consideration that could reduce the fair market value of the remaining property." *Water Auth. of Dickson Cnty.*, 2010 WL 1712968, at *4 (citing 26 AM. JUR. 2d *Eminent Domain* § 284 (2010); 8 Tenn. Prac. Pattern Jury Instr.-CIVIL § 11.04 (2013)). In cases involving a partial taking, such as the case here, the resulting damage should be measured in relation to the entire tract of property. *Mills v.*

4

*Solomon*, 43 S.W.3d 503, 509 (Tenn. Ct. App. 2000).

 *I. Additur*

The State contends the trial court failed to utilize the proper measure of damages when suggesting an additur[5] in this case. Specifically, the State asserts that the trial court erred in awarding "monies to repair access in addition to the diminished fair market value" of the remaining property.[6] Richardson contends the evidence does not preponderate against the trial court's suggestion of additur because the amount awarded remained within the range of valuation evidence established at trial.

In reaching its conclusion that an additur was warranted, the trial court reasoned as follows in its oral ruling:

> So the Court does find that the verdict amount was not within the range, even meeting the lower range, of the reasonableness and because of that, the Court would suggest an additur in the following amounts:
> For the incidental damages to the remainder of the land not taken, the Court was greatly concerned about the access issues; the fact of the lack of a reasonable access, the steepness of the bluff, and, of course, the amount it would take to construct reasonable access.
> So in doing that, the Court is going to suggest an additur with regards to the incidental damages. It was awarded 3,239. Increase that by three times to 9,717. Again, 9,717 on that issue.
> And then on the bulldozer work, the Court would find that that was outside the lower limits of the reasonableness too, besides the incidental one I just mentioned was outside.
> I note the - - basically, the jury had awarded six hours of bulldozer work for the roads, which would be the value of the interior roads. The Court finds that to get it into the lower range, as I did on the incidental into the lower range of reasonableness, it would require, in the Court's mind, to increase that by four times from the $1,500 amount. So that would increase that to 6,000,

---

[5] We note that the State does not appeal the jury's original verdict in this case; rather, the State urges this court to remit the additur awarded. Pursuant to Tenn. Code Ann. § 20-10-101(b)(2), an appellate court may remit all or part of an additur when the court is "of the opinion that the verdict of the jury should not have been increased or that the amount of the additur is improper, but that the judgment of the trial court is correct in all other respects[.]" Thus our analysis will focus on the trial court's award of an additur, not the propriety of the jury's original award.

[6] The State does not appeal the jury's award of $26,129.00 for the 20.93 acres taken.

which would amount to six - - I'm sorry - - 24 hours for bulldozer work, basically, is what it would amount to if going on that theory, anyway, which again, would be $6,000 regardless of whichever way you calculate it.

So that would increase from 1,500 to 6,000, in the Court's mind to get that into the reasonableness range on the low end.

And then we go to the issue of the culverts, and the culverts connecting the interior roads were valued at 358. Again, and the Court finds that that was outside the reasonableness even on the low end and because of the - - the culverts connecting the interior roads should be increased by four times also, which would increase that to one-thousand-four three-two.

The total amount increased would be 17,149. The previous award on those was $5,097, so the total amount that the verdict would be increased in order for the Court's mind to get it on the low end of the reasonableness range would be $12,052 would be the actual net increase . . . .

In analyzing the trial court's decision, it is helpful to review the jury's initial award. The jury awarded a total of $31,226.00 for the property acquired by the State. The jury's award consisted of the following three categories of damages: (1) the cost of the 20.93 acres taken ($26,129.00), (2) the cost of improvements to the property which included the interior roads ($1500) and culverts ($358.00), and (3) incidental damages for the remainder of the land not taken ($3239.00). The State takes issue with the additur for the cost of improvements and incidental damages and argues that the additur for these categories of damages was improper because the court mistakenly awarded these damages in an effort to restore access to the property. We will consider whether the evidence preponderates against the trial court's suggestion of additur on each element of damages. *See Phillips*, 1998 WL 117325, at *2.

### A) Improvements to the property

The jury awarded monies for bulldozer work and culverts to compensate Richardson for the improvements—the interior roads and culverts—taken by the State. The jury was instructed that, "[t]he measure of damages is the fair market value of the land *and improvements* on May 2, 2003, the date of the taking."[7] (Emphasis added).

Terry Evans, a real estate appraiser testified that there was more than a mile of interior roads that existed on the property acquired by the State. Mr. Evans's testimony regarding his

---

[7] The State has failed to provide any authority to suggest that interior roads should not be characterized as improvements to real property. Instead, in its reply brief, the State set forth its argument "[a]ssuming arguendo that dirt roads are an improvement to realty."

valuation of the roads is as follows:

Q.  Okay.  Now, did you also look at any of the improvements on the Richardson property, anything that you classified as an improvement?
A.  I did, after an interview with - - and discussion with Mr. Richardson, and he pointed out the roads on that.  I got some aerial photographs which you provided, and Mr. Richardson provided some other photographs, and Mr. McBride had provided a letter, having scaled those, and determined that there was over a mile - - about a mile and a quarter of roads that existed on the property within - - most of it within the area that was taken, which I considered to be an improvement to the property.
. . .
Q.  And did you value those improvements [on Richardson's property]?
A.  I did.  I valued those roads - - there's 1,477 linear feet of road at the top of the hill, which was wider than the other roads, and there was 6, 227 linear feet of roads - - interior roads, I call them - - and I valued the interior roads at 60 cents a square foot and the primary road at a dollar a square foot.
Q.  All right.  Now, did you also take into consideration the - - what might be termed the remaining economic life of those roads?  Now, this was prior to the taking; right?
A.  This is on the date of the take.
Q.  Right.
A.  And those roads, I viewed them - - had Mr. Richardson's description of those roads, and, obviously, if you have roads of that nature that are not maintained consistently, you're going to have some maintenance on them if you go back to use them.
     But, generally, they had - - as far as the life of using the roads, it probably would exceed my lifetime, but it just depends on what they're used for and what people adapt them to.
Q.  All right.  And did you take that into consideration and deduct values for that?
A.  I did.  I depreciated the value of the roads 20 percent, and after calculating the cost new and taking 20 percent off, I valued the roads at $41,706.
Q.  Now, with that valuation and the valuation of the land itself, without considering the improvements to it, what did you come to as the value of the property with the improvements?
A.  The value of the land with the improvements is around $100,000.
. . .
The roads, obviously have some benefit to the property because of its topography, but because the roads were built where they were, it has some

7

benefit to navigate the property, and if you wanted to divide it into two or three tracts later on, he could do that and divide those roads up.

In contrast, John Hahn, a real estate appraiser called by the State, testified that he did not believe the interior roads had any "contributing value to the property."[8] Other testimony related to the interior roads included that of Gary Vaughn, a contractor in the grading-excavating business. Mr. Vaughn testified regarding the cost of constructing a "skidder road" like the interior roads on Richardson's property. He stated:

Q. Have you ever costed the installation of a skidder road?
. . .
A. That's hard to determine. I've built several.
Q. Is it just the cost of a dozer?
A. Yes.
Q. For a day?
A. Yes.
Q. How much is that?
A. It could be anywhere from 125 to 250 dollars an hour.
Q. Okay. Depending on the terrain?
A. And the size machine.
Q. Okay. But this one is 600 linear feet. I think that's what you testified. How many hours would it take to cut a skidder road that's 600 linear feet?
A. A couple of hours, probably.

We have reviewed the evidence and have determined that the evidence does not preponderate against the trial court's decision to award an additur for the interior roads taken by the State. Mr. Evans valued the roads on the property at $41,706.00. Thus the value of the interior roads testified to at trial ranged from zero (as valued by Mr. Hahn) to $41,706.00 (as valued by Mr. Evans). Although there was conflicting testimony on the issue, we

---

[8] Mr. Hahn testified specifically:

Q. Do you not see those roads, those interior roads? Are we not supposed to value those roads that are - -
A. Here again, they were rendered useless once the timber was cut off of them.
Q. So you're saying they might have had some value at one point in time, but - -
A. They probably had a tremendous amount of value to Mr. Richardson when he was trying to harvest the timber because I can't see how he would, other than a helicopter, get it off that ridge, you know.
Q. Yes, sir.
A. So he had to put temporary roads in.

8

acknowledge that the trial court is in the best position to assess the credibility of the witnesses. *See Columbus Med. Servs., LLC v. Thomas*, 308 S.W.3d 368, 383 (Tenn. Ct. App. 2009). The trial court's additur resulted in a judgment that remained within the range of the valuation evidence presented at trial. Moreover, the additur does not "totally destroy" the jury's verdict. *Long*, 797 S.W.2d at 896. As such, we affirm the trial court's decision to increase the award for interior roads on the land acquired by the State from $1,500 to $6,000.

As for the culverts, Mr. Richardson, president of Richardson Lumber, testified that he purchased two culverts from Dixie Culvert to "make roads to access [the] property." Exhibit 12, introduced at trial, indicates the cost of the metal culverts was $358.01. The jury awarded $358.00 for the culverts taken in the State's acquisition of the property. The trial court increased the amount awarded for culverts by four times, which resulted in an award of $1432.00 for damages related to culverts. We have reviewed the evidence and find nothing in the record to suggest there were additional culverts taken by the State in its acquisition of the property. In other words, the evidence preponderates against the trial court's award of an additur for more culverts. Therefore, we remit the additur of $1432.00 for the culverts and reinstate the jury's award of $358.00 regarding culverts. *See* Tenn. Code Ann. § 20-10-101.

### B. Incidental damages

The jury awarded $3239.00 in incidental damages for the remaining property not acquired by the State. The trial court increased this award to $9717.00. Regarding the calculation of incidental damages, the jury was instructed as follows:

> If the value of the defendant landowner's remaining property has been or probably will be decreased by the construction of the improvements for which the property was taken, the defendant landowner is entitled to additional damages called "incidental damages." Incidental damages are measured by the difference in the remaining property's fair cash market value, immediately before and immediately after the taking.
>
> You should consider the following factors in determining the incidental damages, if any, to the remaining property.
> 1. The loss of its use for any lawful purpose;
> 2. Any unsightliness of the property or inconvenience in its use;
> 3. Any impairment to the owner's access to the property and between the property and nearby streets and highways; and
> 4. Any other considerations that could reduce the fair cash market value of the remaining property.

9

In awarding the additur for incidental damages, the trial court expressed concern regarding the lack of reasonable access, the steepness of the bluff, and "the amount it would take to construct reasonable access." The State asserts that the trial court's comments reveal that the court used the "cost to cure" access which is not the appropriate measure of incidental damages. *See City of Lebanon v. Merryman*, No. 01-A-01-9005-CV00157, 1990 WL 177348, at *3 (Tenn. Ct. App. 1978) (holding that evidence of the "cost to cure" is "admissible because it may tend to prove the diminished value of the remaining land, but the 'cost to cure' cannot be included in fixing the amount of incidental damages").

In support of its contention, the State cites this Court's ruling in *McKinney v. Smith County*, No. M1998-00074-COA-R3-CV, 1999 WL 1000887 (Tenn. Ct. App. Nov. 5, 1999). In *McKinney*, the county condemned certain lots which contained a portion of a landowner's easement. *McKinney*, 1999 WL 1000887, at *1. As a result of this taking, the landowner was no longer able to sufficiently access his property, and he sued for damages. *Id.* The case proceeded to trial, and the jury awarded a $7700.00 verdict in favor of the landowner. *Id.* at *3. The landowner filed a motion for new trial or, in the alternative, for suggestion of additur, which the trial court granted. *Id.* The court entered an order suggesting an additur of $15,000.00 which the county accepted under protest. *Id.* As reasoning for its suggestion of an additur, the trial court stated, "I want everyone to understand that I'm not so much concerned about the values people placed on it. My concern is what it would cost to make an adequate entrance to the property from an abutting roadway." *Id.* at *6. On appeal, this Court considered the trial court's comments and determined that the trial court was mistaken in its belief that the landowner was entitled to the cost of constructing an access road to replace the easement. *Id.* The *McKinney* Court stated, "Inasmuch as the trial court's comments reveal a mistaken view of the applicable law of damages, we reverse the trial court's suggestion of additur . . . ." *Id.*

We find the instant case distinguishable from *McKinney*. The trial court's comments in *McKinney* indicate that the court intended to disregard other evidence of value in favor of relying on the cost to construct an entrance to the property. Here, the court considered the lack of access as an element in assessing the diminished value of the remaining land. The court did not use the cost to restore access as the amount of the additur awarded. Rather, the court increased the jury's initial award by a factor of three.

Testimony regarding the diminution of the property's value included that of Mr. Evans, who testified as follows:

A. The next step we would look at is what is left? What does Mr. Richardson

10

have left? And, basically, what he has left is 32.388[9] acres that he has a legal easement to, but he doesn't have a physical easement to. Legally, he could build a road on the easement, but physically, the cost to build the road would probably exceed what the value of the whole remainder of the land would be. It's a very expensive proposition to do that, and you've seen where that lies. So his only remedy is, I now have a piece of property that is basically landlocked except for a described easement. What can I do with it? And the answer is, he can either keep it and pay taxes on it, or he can sell it to a neighbor. And the neighbor, knowing that he doesn't have good access, is going to obviously use that to ask for a discount, and should.
So I damaged the remaining 32.388 [sic] acres 50 percent, which leaves him about $625 an acre left in the land that remains that has no access that none of us could get to today.
So the damages were $16,194, and his remaining property that he has there is worth $16,194.

Mr. Hahn testified that the State's project did not cause damages to the property. In particular, he stated:

Well, there's numerous ways to handle the damage factor. In this instance, the damage factor could be applied for accessibility, you know, Highway 13 frontage, or lack thereof, you know, but it enjoys the same access at the rear as it did before, so how can you say it's damaged? I mean, access was at the rear before the acquisition, and it's at the rear after the acquisition.

Similar to the testimony on the interior roads, the testimony on the diminution in value of the property ranged from a low of zero (as valued by Mr. Hahn) to a high of $16,194 (as valued by Mr. Evans). The trial court's additur resulted in a judgment that remained within the range of the valuation evidence presented at trial and did not destroy the jury's verdict. *See Long*, 797 S.W.2d at 896. As such, we affirm the trial court's decision to increase the award for incidental damages from $3239.00 to $9717.00.

*II. Discretionary Costs*

The State asserts that the trial court erred in assessing discretionary costs for court reporter expenses and expert witness fees of $9107.00 against it. Richardson asserts that

---

9  Mr. Evans apparently misspoke during his testimony regarding the amount of Richardson's property remaining following the State's taking. Both parties conceded that Richardson retained approximately 26 acres, not 32.388 acres as Mr. Evans testified.

Tenn. R. Civ. P. 54.04(2) permits the court to assess discretionary costs against the State.

This issue involves the interpretation of a statute and a rule of civil procedure, which are questions of law. *State v. Wallace*, No. M2004-00846-COA-R3-CV, 2005 WL 3487855, at *1 (Tenn. Ct. App. 2005). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The power to assess costs against the State is in derogation of the State's sovereign immunity and must be strictly construed. *Matter of Harris*, 849 S.W.2d 334, 336 (Tenn. 1993) (citing *State ex rel. Chanaberry v. Stooksbury*, 145 S.W.2d 775, 776 (Tenn. 1940)). As a result, authority to assess costs to the State cannot be implied from general statutes authorizing the imposition of costs; rather there must be express statutory authority permitting the assessment of costs against the State. *Tenn. Small Sch. Sys. v. McWherter*, No. 01-A-01-9211-CH00447, 1993 WL 295006, at *3 (Tenn. Ct. App. Aug. 4, 1993). Tennessee Code Annotated section 29-17-912 authorizes recovery of certain costs in eminent domain proceedings as follows:

> (a)(1) If the amount of compensation awarded at the trial shall exceed the amount assessed by the condemner and deposited with the clerk, then the bill of costs prepared by the clerk shall be taxed against the condemner. If the amount of compensation awarded at the trial is not in excess of the amount assessed by the condemner and deposited with the clerk, then the bill of costs prepared by the clerk may be taxed against the defendants.
>
> (2) Rule 54.04, the Tennessee Rules of Civil Procedure, shall govern the taxing of any additional costs.

Tennessee Rule of Civil Procedure 54.04 states that, "[c]osts included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, but costs against the state, its officers, or its agencies shall be imposed only to the extent permitted by law." Tenn. R. Civ. P. 54.04(1).

In *State v. Wallace*, No. M2004-00846-COA-R3-CV, 2005 WL 3487855 (Tenn. Ct. App. Dec. 20, 2005), this Court was tasked with determining whether the State was exempt from discretionary costs in eminent domain actions. The *Wallace* court noted that Tenn. Code Ann. § 29-17-912 defers to Tenn. R. Civ. P. 54.04 for the assessment of any additional discretionary costs, and that Tenn. R. Civ. P. 54.04 "standing alone, does not expressly authorize assessment of discretionary costs against the State." *Wallace*, 2005 WL 3487855, at *3; *see also Gooch v. City of Murfreesboro*, No. M2006-01264-WC-R3-WC, 2007 WL 6861045, at *4 (Tenn. Dec. 13, 2007) (reviewing Supreme Court precedent and concluding

12

that Tenn. R. Civ. P. 54.04(2) "does not waive a sovereign's immunity"). Thus, the Court held that Tenn. Code Ann. § 29-17-912 does not provide "express authority to assess costs, other than the clerk's bill of costs, against the State" and vacated the award of discretionary costs. *Wallace*, 2005 WL 3487855, at *4.

Consistent with our prior opinion in *Wallace*, we hold that the trial court erred in awarding discretionary costs against the State in this eminent domain case. Therefore, we vacate the award of $9107.00 in discretionary costs.

CONCLUSION

For the foregoing reasons, we affirm the trial court's additur with respect to the interior roads and incidental damages; we vacate the trial court's additur regarding culverts and reinstate the jury's verdict of $358.00 on that issue; and we vacate the award of discretionary costs against the State. Costs of appeal are assessed against the parties equally.

_____
ANDY D. BENNETT, JUDGE

13