M F A MUTUAL INSURANCE COMPANY, Plaintiff-in-Error, v. ARVILLE KNIGHT and wife, Dorothy Knight, Defendants-in-Error.—429 S.W.(2d) 433.

Middle Section.  January 5, 1968.

Certiorari Denied by Supreme Court April 1, 1968.

Manier, Crouch, White & Herod, Nashville, for plaintiff in error.

Dale Quillen, Harold Collins, Nashville, for defendants in error.

SHRIVER, P.J. The parties will be referred to as plaintiffs and defendant as they appeared in the Court below.

Arville Knight and wife, Dorothy Knight brought suit on a policy of fire insurance issued by the defendant to collect a loss resulting from the damaging or destruction of the plaintiffs' dwelling house and contents by fire on January 12, 1966. There was a verdict and judgment in

favor of plaintiffs for $5,000.00 damage to the dwelling house and $2,500.00 damage to the contents thereof, which represent the full face amount of coverage under the policy of insurance.

From this verdict and judgment the defendant insurance company has appealed and assigned errors.

The defendant filed a special plea in which it said that the policy on which plaintiff sued was not in effect at the time of the alleged loss, or any other time, said policy being void ab initio due to material misrepresentations by the plaintiffs in the application for said policy.

Defendant also insists that, if the policy had not been void ab initio, it expired on January 11, 1966 due to non-payment of premium therefor, and was, therefore, not in effect at the time of the loss which occurred on January 12, 1966.

The defendant was allowed to amend its plea (which it calls an Answer) to allege that the plaintiffs carried another policy of fire insurance on the property and that their rights against the defendants and the defendant's liability are thus limited.

## THE FACTS

The essential facts may be summarized as follows:

The plaintiffs, Arville B. Knight and wife Dorothy Knight, owned a dwelling house near Springfield in Robertson County, Tennessee, which was severly damaged by fire on January 12, 1966.

Prior thereto on January 11, 1964 the defendant issued a policy of fire insurance to the plaintiffs the face amount of which was $5,000.00 on the dwelling house and $2,500.00 on the household goods or contents.

The fire occasioning the loss in question occurred accidentally on January 12, 1966 and after claim was duly made, the company refused to pay the loss and this suit resulted.

The record shows that Mrs. Dorothy Knight, wife of Arville B. Knight, called Harold Wakefield, an agent of the defendant company, to talk to him about insurance on her automobile and while talking to him he asked about insurance on the house. She stated that she didn't know whether they had any or not and, upon his solicitation, she agreed to take out a policy of fire insurance on the house and the contents. She had known Mr. Wakefield all of her life as they had grown up as neighbors.

The application which contains certain questions and answers was written by Mr. Wakefield, the agent. It is shown that, at the time Mrs. Knight was talking to the agent, answering questions and making application for the insurance, Arville Knight was not present. Said application, exhibit to the testimony of Wakefield, shows the name of the applicant to be Dorothy and Arville Knight, but it is signed only by Dorothy Knight and by Harold D. Wakefield, agent.

On the said application is a "Binder" which insures in accordance with its terms for a period of thirty days, affording coverage of $5,000.00 and $2,500.00 on the house and contents respectively. On the back of the form, under "Applicant's Statement", the question is asked "Your occupation" and in ink, written by the agent, is the answer, "Heavy Equipment Operator." After "Employer's Name" is written, "Lorry Jackson." Under the question "Your Age" is "2-20-1923—wife; 6-16-1918—husband".

Question 15 is, "Have you Ever Been Convicted of a Crime?" and the answer written in ink is "No".

Question 17 is, "Do You Now Have an Existing Policy Providing Coverage on This Property?" Answer "No".

Under the section of the application entitled *"Agent's Inspection"* we find, "Date You Inspected", Answer: "1-11-64". Then follows the size of the building, number of rooms with appropriate answers. As to physical condition of the building the answer is "Good"; "Age of Wiring"—"New". "Is Housekeeping clean?", Answer: "Yes". "Is Applicant's Financial Status Questionable?", Answer: "No". "How Long has Applicant Lived in Community?" Answer: "Lifetime". *"What is Applicant's Reputation in Community?"—"Good".* Question 32 is: *"Should Applicant be Further Investigated by the Company?"*, the answer is written in "No". Then under question 33, "Moral Character of Applicant" is the statement, "I know of nothing past or present that would reflect unfavorably on the moral character of the applicant." After "Exceptions, if any", written in ink is, "None.". This is signed by Harold D. Wakefield.

On the witness stand Mrs. Knight was asked if she knew that back in 1934 her husband had been convicted of housebreaking and larceny and had served some time in prison and she answered that she never knew anything about that and was unaware of it until she was told after she came to the trial of this case that it was true.

She was also asked about additional insurance on the property and she stated that she knew of no additional insurance on the property but that she had been informed after this thing came up that the mortgagee, the First

National Bank of Springfield, had procured a policy of fire insurance on the house for its own protection.

Inasmuch as Arville Knight had been convicted of a crime a number of years prior to the time the application was signed by Mrs. Knight and the answer to the question in the application "Have you ever been convicted of a crime?" was answered "No", it is insisted that the policy was void ab initio because if the company had known of the fact of his conviction it would not have issued the policy.

We think the assignment of error based on this proposition should be overruled because, among other things, the agent who took the application had known Mrs. Knight all his life and Mr. Knight for many years and he deliberately failed to question Mr. Knight in regard to this or any other matter, but, sat down with Mrs. Knight in the absence of Mr. Knight and filled out the application. Naturally, when she was asked, "Have you ever been convicted of crime?" she answered "No" which was true. It developed in the proof, which is uncontroverted, that she had no knowledge whatever of Mr. Knight's having been convicted of a crime a number of years before.

The company evidently did not rely heavily on these answers since Mr. Wakefield, the authorized agent, not only contented himself with questioning Mrs. Knight, but went further and made an inspection of his own and reported to the company on the moral character of the applicants as well as the condition of the property sought to be insured. It is to be observed that no question is raised that the fire was other than accidental in nature and it is not even suggested that Mr. Knight had anything to do

with causing the fire. The assignment of error based upon the answer in the application respecting conviction of a crime is overruled.

■ It is urged that the policy had lapsed at the time of the fire on January 12, 1966. In answer to this proposition it is shown that the policy was issued January 11, 1964 and, on its face, shows that it was for a term of five years beginning 11:00 A.M., January 11, 1964 and expiring January 11, 1969. It also shows on its face that a premium of $44.00 was payable at the inception and annually thereafter, a receipt being given for the initial payment. Attached to the policy and made a part thereof is "Deferred Premium Payment Endorsement" which recites that, in consideration of insured's election to pay the premium in equal installments as indicated on the first page of the policy; "If the insured is in default of any such premium payment and this company elects to cancel this policy, notice of cancellation shall be in accordance with the provisions of this policy, but in such case any portions of the premium previously paid shall be earned by the company."

The record shows that on January 10, 1966 the agent, Mr. Wakefield, went by the restaurant where Mrs. Knight worked and she gave him a check for $44.00 covering the premium installment which was due on the following day, January 11th. Mr. Wakefield took this check and instead of presenting it to the Bank locally, he elected to forward it to the home office of the company in Missouri and this check, drawn on the First National Bank of Springfield, Tennessee, dated January 10, 1966, signed Dorothy Knight, "For Fire Insurance", photostatic copy of which is in the record and shows on the back thereof that it was finally presented to the Bank on which it was drawn on

January 24, 1966, having been deposited in the **Boone County** National Bank in Missouri on January 17, 1966. The record also shows that when the check was presented to the First National Bank at Springfield the balance in Mrs. Knight's checking account was less than $44.00, hence, it was returned marked, "Insufficient Funds".

The record also shows that on the day the check was written sufficient funds were on deposit in the bank to cover its payment, and that such was the case every day until January 20th when, for the first time, the balance fell below $44.00.

On January 31, 1966 a letter was addressed to Arville Knight, Springfield, Tennessee on the letterhead of "MFA Insurance Companies" returning the $44.00 check of Mrs. Knight, stating that it was returned by the Bank and not honored for the reasons shown on the check, and stating that, since the check was not honored on presentation, the premium was not paid and that the policy lapsed, and further stating, "Upon payment of the premium, consideration will be given to the re-instatement of your policy as of the date we receive such payment," signed by William E. Moseley, Accounting Department.

Then on February 3, 1966 a letter was dispatched to Mr. and Mrs. Arville Knight, Springfield, Tennessee, stating that the company had been advised that on January 12, 1966 they sustained a fire loss on the property in question and reciting that Question No. 15 of the original application with respect to having been convicted of a crime was answered "No", and that investigation revealed that "your husband" was in fact convicted of a crime and served time for the conviction. It further stated that the policy of insurance would not have been

issued by the company if it had not been induced to execute it by the false representations and concealment of the true facts respecting the conviction for crime and stating:

"It is therefore the position of this company that the policy issued on behalf of this company purporting to insure your dwelling and contents against loss by fire was void and never effective. Thus, this company cannot recognize the claim presented by you for loss to property set out above. Attached is our check for $93.28 which represents the total amount of premium paid by you, plus 6 per cent interest."

The letter concludes: "Even if the misrepresentation involving the basic application had not been discovered, you would not have had coverage on the date of the fire since the policy lapsed on 1-11-66 and the fire occurred 1-12-66". Signed by Bob W. Couch, Attorney.

As noted hereinabove the policy was issued for a term of five years and there is a provision therein that, if the insured was in default in any premium payment *and the company elected to cancel the policy* notice of cancellation would be in accordance with its provisions. In lines 60-65 the policy provides:

"This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation, with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand."

There was no notice of cancellation of this policy until after the loss had occurred, hence, we conclude that it was in force and effect at the time of the fire on

January 12, 1966. Therefore, the assignment of error on this proposition is overruled.

As to the proposition asserted by defendants that there was other insurance on the property at the time of the application and that, therefore, the company's liability was affected by this other insurance, we find in line 71 of the policy "Apportionment Clause" where it is provided that the Company shall not be liable for a greater proportion of the loss, less the amount of the deductible, if any, from any peril included in the endorsement than the amount of insurance this policy bears to the whole amount of fire insurance covering the property * * *''.

We find nothing in the record upon which to base the proportion of the loss owed by the defendant in relation to any other insurance that may have been on the property at the time. It appears that the mortgagee had a policy of insurance for its protection but as to the extent this affects the liability of defendant, the record is silent.

The Trial Judge charged the jury as follows:

"Now, I have been specially requested to instruct you, and I do so, that if you find from a preponderance of evidence of proof that the policy was void ab initio, and further find that the policy had not lapsed for failure to pay the premium, and find that the Plaintiffs are entitled to recover, then, in that event, the Defendants would not be liable for a greater proportion of the fire loss than the amount that their insurance bears to all of the insurance on the property. (B.E. p. 113, lines 20-25; p. 114, lines 1-3)."

Thus, it appears that the verdict covers the above proposition under a correct charge. The assignment on this question is overruled.

It is asserted that the verdict is excessive and it is argued that it is particularly excessive in respect to the allowance of $2,500.00 for destruction of household goods.

Mrs. Knight testified as to the cost of items of household goods, furniture, linens, books, toys, etc. and estimated a loss of $2,309.92. The jury brought in a verdict of $2,500.00 for loss of contents of the dwelling.

■ Mr. Jernigan, who qualified as an expert, testified that his estimate of the loss to the house was $10,250.00, while Mr. Russell, another man who testified as an expert, estimated the repairs to the house at between $10,000.00 and $12,000.00. Thus, there is evidence to support the verdict of the jury even assuming that there is another policy covering loss to the extent of $5,000.00, because both these witnesses fixed the loss to the house at more than $10,000.00.

■ As to the furniture, we are impressed that Mrs. Knight gave to the best of her ability the cost of the items of furniture, clothes, linens, etc. and that there is no evidence upon which a verdict could be based, except by speculation, to cover the value of other items that she said she didn't know about, such as toys, books, etc. not included in her list. To say the least, there is no evidence to support a verdict beyond $2,309.92 for household goods as testified to by her. We therefore suggest a remittitur of $190.08 from the $2,500.00 verdict judgment. To this extent the assignment of excessiveness is sustained.

We find no merit in the other assignments.

It results that except for the above remittitur the judgment of the Trial Court is affirmed.

Modified and affirmed.

Puryear and Todd, JJ., concur.