**James W. HINDMAN, III**

v.

**John DOE et al.**

Court of Appeals of Tennessee,
at Nashville.

May 8, 2007 Session.

May 24, 2007.

Permission to Appeal Denied by
Supreme Court Sept. 17, 2007.

John Thomas Feeney, Nashville, Tennessee, for the appellant, Specialty Risk Insurance Company.

W. Gary Blackburn, Nashville, Tennessee, for the appellee, James W. Hindman, III.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

This appeal involves a dispute regarding the availability of uninsured motorist coverage for a motorist who was seriously injured after striking a large rock in the roadway. The motorist filed suit in the Circuit Court for Davidson County against the unknown owner and operator of the dump truck whom he believed were responsible for the rock being in the roadway. He also made an uninsured motorist claim against his own insurance company. A jury apportioned fault between the motorist and the unknown owner or operator and assessed the motorist's damages. The trial court entered a $143,925 judgment for the motorist against his insurance carrier. Thereafter, the trial court determined that the jury's award for medical expenses exceeded the motorist's proof and suggested a $10,135.55 remittitur. The motorist accepted the remittitur under protest, and the trial court entered a $134,296.23 judgment for the motorist. On this appeal, the insurance carrier asserts that the motorist failed to prove that an unknown, uninsured motorist caused the rock to be in the roadway and that he had not been negligent in his efforts to locate the owner or operator of the dump truck. The motorist takes issue with the trial court's decision to suggest a remittitur. We have determined that the record contains sufficient evidence to support a judgment against the insurance carrier and that the trial court did not err by suggesting a remittitur.

## I.

James Hindman, III was driving on Nolensville Road in Nashville on the morning of January 10, 2004. Although the road was not particularly crowded, traffic was moving approximately fifteen to twenty miles per hour below the speed limit. When the vehicle directly in front of him suddenly swerved to the left, Mr. Hindman looked to his right to see what the driver was trying to avoid. He observed a large pile of dirt on the paved shoulder of the road that extended to the white line on the roadway and possibly into the travel lane. As soon as Mr. Hindman looked back to the road in front of him, he observed a large rock—approximately two feet wide and just under two feet tall—in the lane in front of him. In the split second before impact, Mr. Hindman attempted to swerve to avoid the rock, but he was too late. His vehicle struck the rock. His front tire blew out, and a wheel broke and began digging into the asphalt roadway. Mr. Hindman's vehicle careened across the lane of traffic and into a ditch, flipped over, and barrel-rolled before coming to rest upside down.

Mr. Hindman was taken to the hospital where he was operated upon for approximately eight hours. The right side of his face, which had been torn from his scalp to his chin, was sutured. His ear was reconnected. A few weeks later he returned to the hospital for an operation to remedy a vision problem. One of Mr. Hindman's eyes was sinking into his sinus cavity causing him to suffer double division, dizziness, nausea, and headaches. Bone chips from the orbital plate that had fallen into the sinus cavity were removed. Unable to repair the bone structure itself, an artificial plate was implanted to cover the bottom part of the eye to prevent it from sinking. Mr. Hindman's medical expenses totaled $44,864.45.

In the days preceding the accident, Mr. Hindman had seen a three-axle white dump truck on the side of the road near the location of the pile of dirt and the large rock he struck. The truck was apparently disabled. Following the treatment for his injuries, Mr. Hindman attempted to find the owner of the dump truck because he believed that the rock he struck had come from the dump truck. After reviewing the police accident report, he focused his attention on W.L. Hailey & Company ("W.L. Hailey") and another construction company with a similar name. He retained an attorney who sent letters to both companies inquiring whether they owned the three-axle dump truck that had been observed on the side of the road. The companies responded that the dump truck was not theirs.

Mr. Hindman, who is a general contractor himself, continued to investigate. He learned that W.L. Hailey had been working on a sewer construction project in the area of the accident. He also knew that such projects required fill material and that rock and dirt were often used for fill material. Mr. Hindman personally went to W.L. Hailey's construction yard looking for a three-axle white dump truck similar to the one that had been parked on the side of the road. He did not find one.

Approximately five months after the accident, Mr. Hindman hired Integrated Resource Group ("IRG"), a private investigative agency, to identify the owner or operator of the white three-axle dump truck. He told IRG that he suspected that the dump truck belonged to W.L. Hailey or to one of W.L. Hailey's subcontractors. At a cost of thousands of dollars to Mr. Hindman, IRG interviewed more than forty witnesses during a sixteen-day investigation that stretched from May 3, 2004 to May 19, 2004. IRG also contacted Metro Water Services as part of its in-

vestigation, but Metro Water Services was not helpful. IRG was also unable to determine to whom the dump truck belonged.

Mr. Hindman filed suit in the Circuit Court for Davidson County on August 12, 2004. He named as defendants the unknown driver and unknown owner of the dump truck. Because he was seeking to recover under his uninsured motorist coverage, he also named Progressive Insurance Company ("Progressive"), his automobile insurance carrier, as a defendant. In its answer, Progressive identified Specialty Risk Insurance Company ("Specialty") as its subsidiary that issued Mr. Hindman's uninsured motorist coverage.[1]

The case was tried to a jury in January 2006. Mr. Hindman presented evidence to substantiate his claim that the large rock in the roadway had been dumped from the white three-axle dump truck and had subsequently rolled onto the roadway. He also put on evidence regarding his damages, as well as his efforts to identify the owner or operator of the white dump truck. Specialty elected not to present any evidence. The jury determined that Mr. Hindman was five percent at fault and that the unknown operator of the dump truck was ninety-five percent at fault. The jury also determined that Mr. Hindman had sustained $151,500 in damages, including $55,000 for the medical expenses he had incurred by the time of the trial. The trial court thereafter entered a $143,925 judgment for Mr. Hindman.

Mr. Hindman filed a motion for $2,919 in discretionary costs, and Specialty filed a post-trial motion seeking relief alternatively under Tenn. R. Civ. P. 50.02 and Tenn. R. Civ. P. 59.01. One of the grounds of

Specialty's motion was that the jury's award of $55,000 for medical expenses exceeded Mr. Hindman's proof of damages. The trial court awarded Mr. Hindman $2,919 in discretionary costs and, following a hearing, denied Specialty's motion for a judgment in accordance with its motion for a directed verdict. The trial court also denied Specialty's motion for a new trial except for the award for medical expenses. The court determined that Mr. Hindman had proved only $44,864.45 in medical expenses and, therefore, suggested a $10,135.55 remittitur. Mr. Hindman accepted the remittitur under protest. On September 18, 2006, the trial court entered a $134,296.23 judgment for Mr. Hindman.

Specialty perfected an appeal. It asserts that Mr. Hindman did not submit sufficient evidence to permit the jury to find that the large rock that Mr. Hindman struck was in the roadway as the result of the negligence of an uninsured motorist. It also asserts that Mr. Hindman failed to present sufficient evidence demonstrating that he had not been negligent in his efforts to identify the owner or operator of the "phantom vehicle." For his part, Mr. Hindman takes issue with the trial court's suggestion of a $10,135.55 remittitur.

## II.

Specialty's first argument is that Mr. Hindman failed to present sufficient evidence to enable the jury to conclude that the negligence of an uninsured motorist set in motion the chain of events that caused the large rock to be in the roadway. The argument is based on Specialty's belief that Tenn.Code Ann. § 56–7–1201(e)(1)(B) (2000) requires causation to be proved by clear and convincing evi-

---

1. Despite Progressive's identification of Specialty as the issuer of Mr. Hindman's uninsured motorist coverage, neither Mr. Hindman nor Progressive attempted to make Specialty a party. However, apparently by agreement, the parties have deemed Specialty rather than Progressive to be the defendant in this case. We shall do the same.

dence. Specialty's interpretation of the statute is incorrect. We have determined, using the correct standard, that Mr. Hindman presented sufficient evidence to enable the jury to conclude that the presence of the rock in the roadway was caused by the negligence of the unknown operator of the white three-axle dump truck.

**A.**

■ We turn first to Specialty's argument regarding Mr. Hindman's burden of proof. Citing Tenn.Code Ann. § 56–7–1201(e)(1)(B), Specialty insists that Mr. Hindman was required to present clear and convincing evidence regarding causation. While Tenn.Code Ann. § 56–7–1201(e)(1)(B) requires that the existence of the unknown motorist be established by clear and convincing evidence, the remainder of the claim need only be proved by a preponderance of the evidence. The Tennessee Supreme Court addressed this matter head-on ten years ago when it held that the clear and convincing evidence standard in Tenn.Code Ann. § 56–7–1201(e) "applies only to the existence of the unknown motorist, the other essential elements of the claim, including causation, may be established by the preponderance of the evidence." *Fruge v. Doe*, 952 S.W.2d 408, 412 (Tenn.1997); *see also Nicely v. Doe*, No. 03A01–9810–CV–00322, 1999 WL 235795, at *3–4 (Tenn.Ct.App. Apr.16, 1999) (No Tenn. R.App. P. 11 application filed). Accordingly, we decline to apply the clear and convincing evidence

standard to Mr. Hindman's evidence regarding how the large rock came to be in the roadway.

**B.**

■ Specialty next argues that Mr. Hindman's evidence failed to provide the jury with sufficient facts to enable the jury to determine how the rock came to be in the roadway.[2] Equating Mr. Hindman's evidence to the evidence offered in *Bruno v. Blankenship*, 876 S.W.2d 294 (Tenn.Ct. App.1992) and *Oliver v. Quinby*, No. W2000–02158–COA–R3–CV, 2001 WL 359241 (Tenn.Ct.App. Apr.6, 2001) *perm. app. denied* (Tenn. Oct. 8, 2001), Specialty insists that the jury could only guess about how the rock came to be in the roadway. We have determined that *Bruno v. Blankenship* and *Oliver v. Quinby* have no bearing on this case.

■ Mr. Hindman's evidence regarding how the rock came to be in the roadway is largely circumstantial. However, the law does not distinguish between the probative value of direct evidence and the probative value of circumstantial evidence. *In re M.O.*, 173 S.W.3d 13, 20 (Tenn.Ct. App.2005). Both types of evidence can be equally relevant, Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.01[5], at 4–11 (5th ed.2005), and equally probative, *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 825 (Tenn.Ct.App.2005). Accordingly, parties pursuing a claim for damages may prove any material fact us-

---

**2.** Specialty has not argued that Mr. Hindman's injury was not caused by the "ownership, maintenance, or use" of a motor vehicle. Tenn.Code Ann. § 56–7–1202(a); *see also Nicely v. Doe*, 1999 WL 235795, at *3 ("In general terms, uninsured motorist coverage is designed to afford a measure of protection to one damaged as a proximate result of the negligence of an uninsured or underinsured individual or entity where that negligence arises 'out of the ownership, maintenance, or

use of a motor vehicle.' "). In other words, Specialty has not taken exception to the conclusion that a disabled dump truck dumping rock and dirt from its bed onto the paved shoulder of the road before being towed away amounts to the "ownership, maintenance, or use" of a motor vehicle. Accordingly, the question of whether injuries caused by this conduct amounts to injuries resulting from the "ownership, maintenance, or use" of a motor vehicle is not before the court.

ing direct evidence, circumstantial evidence, or a combination of both. *State v. Phillips,* 138 S.W.3d 224, 230 (Tenn.Ct. App.2003); *Burton v. Warren Farmers Coop.,* 129 S.W.3d 513, 523 (Tenn.Ct.App. 2002).

Mr. Hindman's evidence regarding how the rock came to be in the roadway consisted of his own testimony and the testimony of three other witnesses. Mr. Hindman testified that he had observed a white three-axle dump truck on the side of the road near the scene of the accident for several days before the accident. James Solomon, who lives approximately one mile from the scene of the accident, buttressed Mr. Hindman's testimony by testifying that he drove past the location of the accident two or three times a day and that he saw a disabled white dump truck on the side of the road near the location of Mr. Hindman's accident during the week immediately preceding the accident. Mr. Solomon recalled that the truck was filled with rock and dirt. He also remembered seeing a number of people working on the truck and a number of other vehicles parked nearby. One day prior to Mr. Hindman's accident, on his way back from the grocery store, Mr. Solomon observed that the truck's bed was tilted upward and that a pile of dirt and rock had been dumped out and was laying right underneath the truck. Mr. Solomon also testified that he noticed several large rocks sitting on the top of the pile of dirt near the white line between the shoulder of the road and the travel lane. John Carter, another passerby, testified that on January 9, 2004—the day before Mr. Hindman's accident—he observed a pile of rock and dirt next to the roadway near where Mr. Hindman's vehicle had flipped over on its roof.

In addition to these witnesses, Mr. Hindman presented the testimony of Ronald Jones, a soils engineer. Mr. Jones testified that soil dumped from a dump truck initially stands at is steepest inclination but that gravity and other forces will eventually cause the soil to slough. He noted that the pile will continue to settle, consolidate, and erode until it levels out. Mr. Jones also testified that a rock could easily roll off a pile of soil as the soil consolidates and that the rock could even fall farther if hit by another rock.

Mr. Hindman's evidence regarding the existence of the white three-axle dump truck and the dirt and rock differs markedly from the evidence found lacking in *Bruno v. Blankenship* and *Oliver v. Quinby.* The plaintiff in *Bruno v. Blankenship* crashed his vehicle while swerving to avoid a ladder that was laying in the middle of the road but was unable to offer any evidence regarding how the ladder got there. This court, noting the lack of evidence connecting the presence of the ladder in the road to the conduct of an unknown motorist, stated that "[t]he ladder may have fallen off a vehicle or it may have been placed on the highway as a prank. It may have been deliberately thrown from a vehicle by a passenger; i.e. someone other than the [unknown] motorist." *Bruno v. Blankenship,* 876 S.W.2d at 296. Similarly, the plaintiff in *Oliver v. Quinby* was injured in an accident resulting from a piece of carpet that was laying in the middle of the road but was unable to offer any evidence regarding how the carpet got there. Once again, this court noted that "it is undisputed that no one saw how the pile of carpet came to be in the roadway. The carpet could have been placed on the highway as a prank or it could have been thrown deliberately from a vehicle by a passenger." *Oliver v. Quinby,* 2001 WL 359241 at *3.

In this case, Mr. Hindman presented evidence establishing the presence of a

disabled white dump truck on the shoulder of the roadway near the accident scene during the week preceding the accident. He also presented evidence that the bed of this dump truck was filled with dirt and rock, that this material had been dumped on the shoulder of the road near the accident, and that large rocks similar to the rock that Mr. Hindman struck were on the top of the material that had been dumped on the shoulder of the roadway. In addition, he presented expert testimony explaining how the rocks on the pile of dirt could have rolled onto the road as a result of the natural consolidation of the pile of dirt. Thus, unlike the plaintiffs in *Bruno v. Blankenship* and *Oliver v. Quinby*, Mr. Hindman presented evidence establishing a chain of events between the negligent actions of the unknown motorist—the operator of the white three-axle dump truck—and the accident. This evidence is sufficient to support the jury's verdict.

### III.

■ Specialty also asserts that Mr. Hindman failed to prove, as required by Tenn.Code Ann. § 56–7–1201(e)(3),[3] that he made reasonable efforts to identify the owner or operator of the white three-axle dump truck. Mr. Hindman counters by asserting that the record contains ample evidence to support the jury's conclusion that he made reasonable efforts to identify the other vehicle and the owner or operator of that vehicle. We have determined that the record contains material evidence supporting the jury's conclusion that Mr. Hindman made reasonable efforts to identify the owner or operator of the white three-axle dump truck.

It is undisputed that Mr. Hindman took steps to identify the owner of the white three-axle dump truck that he believed left the pile of dirt and rock on the side of the road. Thus, the question here is whether his efforts were reasonable enough under the circumstances to support the jury's conclusion that he had not been negligent in his efforts to identify either the vehicle or its owner or operator at the time of the accident. A brief synopsis of the evidence demonstrates that Mr. Hindman was not negligent.

Mr. Hindman reviewed the police report of the accident and identified two contractors who could have been working on a nearby sewer project. His lawyer formally contacted these contractors to ascertain the owner or operator of the white three-axle dump truck. When the contractors professed ignorance about the truck, Mr. Hindman retained IRG to conduct an investigation. IRG conducted a sixteen-day investigation and interviewed more than forty witnesses, as well as Metro Water Services, in an effort to find the owner or operator of the truck. These efforts also failed to identify the owner or operator of the truck.

Specialty insists that Mr. Hindman's evidence regarding his efforts to identify the owner or operator of the white three-axle dump truck is insufficient because he did not hire IRG until five months after the accident and because he failed to identify the forty witnesses IRG interviewed during its investigation. This argument rings hollow in light of Specialty's failure to cross-examine IRG concerning whether the individuals it interviewed were meaningful interview subjects.[4] Based on the

---

**3.** If the owner or operator of the vehicle that caused bodily injury or property damage to the insured is unknown, Tenn.Code Ann. § 56–7–1201(e)(3) requires the insured to prove that he or she "was not negligent in

failing to determine the identity of the other vehicle and the owner or operator of the other vehicle at the time of the accident."

**4.** IRG's report, including specifics as to which witnesses had been interviewed, was attached

evidence that Mr. Hindman presented, the jury was certainly entitled to conclude that he acted reasonably by retaining an investigative agency costing thousands of dollars to conduct a sixteen-day investigation to ascertain the owner or operator of the white three-axle dump truck.[5]

## IV.

█ Mr. Hindman asserts that the trial court erred by suggesting a $10,135.55 remittitur. He argues that, notwithstanding the itemization of damages on the verdict form, the trial court should have treated the jury's verdict as a general verdict. He also asserts that the trial court should have allowed the jury's verdict to stand because the damages awarded by the jury are not unreasonable in light of the evidence. We have determined that the evidence does not preponderate against the remittitur.

The Tennessee General Assembly has defined the standard of review with regard to remittiturs. Tenn.Code Ann. § 20–10–102(b) (1994) directs this court to

> review the action of the trial court suggesting a remittitur using the standard of review provided for in Rule 13(d) of the Tennessee Rules of Appellate Procedure applicable to decisions of the trial court sitting without a jury. If, in the opinion of the court of appeals, the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount orig-

inally awarded by the jury in the trial court.

Pursuant to Tenn. R.App. P. 13(d), "[u]nless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."

█ The appellate courts customarily conduct a three-step review of a trial court's adjustment of a jury's damage award. First, we examine the reasons for the trial court's action because adjustments are proper only when the court disagrees with the amount of the verdict. *Burlison v. Rose,* 701 S.W.2d 609, 611 (Tenn.1985); *Palanki ex rel. Palanki v. Vanderbilt Univ.,* 215 S.W.3d 380, 385 (Tenn.Ct.App.2006). Second, we examine the amount of the suggested adjustment because adjustments that "totally destroy" the jury's verdict are impermissible. *Foster v. Amcon Int'l, Inc.,* 621 S.W.2d 142, 148 (Tenn.1981); *Bain v. Simpson,* No. M2001–00088–COA–R3–CV, 2002 WL 360320, at * 3 (Tenn.Ct.App. Mar.7, 2002) (No Tenn. R.App. P. 11 application filed); *Guess v. Maury,* 726 S.W.2d 906, 913 (Tenn.Ct.App.1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. *Myers v. Myers,* No. E2004–02135–COA–R3–CV, 2005 WL 1521952, at *3 (Tenn.Ct.App. June 27, 2005) (No Tenn. R.App. P. 11 application filed); *Long v. Mattingly,* 797 S.W.2d 889, 896 (Tenn.Ct.App.1990).

---

to pleadings filed as part of the summary judgment related materials filed with the trial court.

**5.** We also note that Specialty's argument appears at times to criticize Mr. Hindman for

failing to name W.L. Hailey as a defendant. If Specialty believed that W.L. Hailey was the owner or operator of the white three-axle dump truck, it could have easily filed a third-party complaint against W.L. Hailey.

The jury awarded Mr. Hindman $55,000.00 for his past medical expenses despite the fact that the evidence established with precision that Mr. Hindman's past medical expenses totaled $44,864.45. The reason the trial court opted to suggest a remittitur of $10,135.55 was to reflect the difference between the amount the jury awarded for past medical expenses and the actual past medical expenses that were proved at trial. This remittitur did not totally destroy the jury's verdict, and the evidence supports the trial court's suggestion of remittitur.

Consequently, the sole question before us is whether the trial court erred by separately considering the jury's calculation of a particular category of damages. The verdict form sub-divided the total damage award into the various categories for which Mr. Hindman was seeking and could recover for his injuries. The trial court was free to address an error by the jury with regard to one of the individual categories as its basis for suggesting remittitur. *See e.g., Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d at 387–88; *M F A Mut. Ins. Co. v. Knight,* 58 Tenn. App. 231, 241, 429 S.W.2d 433, 438 (1968); *see also Moore v. Ellis,* 408 S.W.2d 724, 726–27 (Tex.Ct.App.1966). Thus, we conclude that the trial court did not err in suggesting remittitur.

### V.

We affirm the jury's and the trial court's decision that Mr. Hindman presented sufficient evidence to establish his uninsured motorist claim, and we also affirm the trial court's decision to suggest a $10,135.55 remittitur. We remand the case to the trial court for whatever further proceedings consistent with this opinion are required, and we tax the costs of this appeal in equal proportions to Specialty Risk Insurance Company and its surety and to

James W. Hindman, III for which execution, if necessary, may issue.