IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 9, 2024 Session

## KERRY WRIGHT v. JOHN DOE ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-1541-19      Mary L. Wagner, Judge**
_____

**No. W2023-00084-COA-R3-CV**
_____

Plaintiff alleged that actions of defendant tow truck driver led to John Doe driving into plaintiff's vehicle and causing injury. Towing company and driver moved for summary judgment based on the lack of evidence as to the cause of John Doe's actions. The trial court agreed, granting summary judgment for lack of evidence that towing company or driver was the cause in fact of plaintiff's injury. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Kevin D. Bernstein, Albert G. McLean, and Thomas F. Preston, Memphis, Tennessee, for the appellants, Travelers Insurance Company and John Doe.

Brandon S. Leslie, Memphis, Tennessee for the appellant, Kerry Wright.

Charles M. Weirich, Jr. Memphis, and Hayley E. Vos, Nashville, Tennessee, for the appellees, Choice Towing, LLC, and Raul Valenzuela.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2019, Plaintiff/Appellant Kerry Wright filed a complaint against Defendant/Appellee Choice Towing, LLC ("Choice Towing") and John Doe in the Shelby County Circuit Court ("the trial court"). The complaint alleged that on April 8, 2018, Mr.

Wright and his son, Kerry Wright, Jr. ("Wright, Jr.") were parked on the right-hand shoulder of the interstate behind the broken-down vehicle of Wright, Jr.'s girlfriend ("Ms. Rust"). A tow truck owned by Choice Towing and operated by a Choice Towing employee arrived and parked in front of Ms. Rust's vehicle. Part of the tow truck extended into the right-hand lane of the interstate while the Choice Towing employee began the process of securing the disabled vehicle onto the tow truck. According to the complaint, Mr. Wright was injured when John Doe drove his vehicle into Mr. Wright's vehicle and fled the scene. The complaint raised claims of negligence, negligence per se, and negligent hiring, supervision, and training against Choice Towing, and claims of negligence and negligence per se against John Doe.

Unnamed Defendant Travelers Insurance Company ("Travelers"), filed an answer on May 2, 2019, in its capacity as the uninsured/underinsured motorist carrier and without electing to defend in its own name or the name of the uninsured driver. Travelers denied the claims in the complaint and raised multiple affirmative defenses, including the comparative fault of Mr. Wright and Choice Towing. Choice Towing filed an answer on May 13, 2019.

Over the opposition of Choice Towing and Travelers, Mr. Wright received leave to amend his complaint on November 26, 2019. The amended complaint, filed January 31, 2020, added claims of negligence and negligence per se against the Choice Towing employee operating the tow truck, Defendant/Appellee Raul Valenzuela (together with Choice Towing, "Appellees").

Appellees filed an answer to the amended complaint on April 16, 2020, raising the affirmative defense of the comparative fault against John Doe and Mr. Wright. Appellees were granted leave to amend their answer on December 18, 2020, over the opposition of Mr. Wright. The amended answer was filed March 4, 2021, and raised only the affirmative defense of the statutory right to tend to a disable vehicle. By agreed order, Appellees amended and corrected their amended answer in September 2021 to raise both the statutory right and the comparative fault of John Doe and Mr. Wright as affirmative defenses.

Appellees moved for summary judgment on May 10, 2022, asserting that no act or omission of Appellees caused or contributed to Mr. Wright's injuries. Appellees emphasized that the tow truck was parked in front of Ms. Rust's disabled vehicle, which Mr. Wright testified in his deposition was parked twenty to forty feet in front of his vehicle.

On August 16, 2022, Mr. Wright responded in opposition to the motion for summary judgment, arguing that a genuine dispute remained as to causation and a jury should determine the percentage of the parties' comparative fault. Mr. Wright admitted each of

Appellees' undisputed material facts[1] and provided a statement of additional undisputed material facts. Travelers filed a response opposing summary judgment on August 19, 2022, arguing that genuine disputes remained as to whether the tow truck's position created an unreasonably dangerous condition and whether John Doe was negligent. Travelers similarly admitted Appellees' statement of undisputed material facts and adopted Mr. Wright's additional statement of undisputed material facts. In reply, Appellees argued that no non-speculative evidence existed as to the rationale behind John Doe's actions so any assertions regarding the cause of the accident were based on inadmissible evidence.

The trial court granted summary judgment for Appellees by order of December 13, 2022. Therein, the trial court specifically found the following facts to be undisputed:

> 7. [Mr.] Valenzuela parked his tow truck on the right-hand shoulder, but partially in the right lane of traffic.
> 8. [Mr.] Valenzuela's tow truck was parked in front of the disabled vehicle and [Mr. Wright's] vehicle was approximately forty feet behind the disabled vehicle.
> 9. John Doe, an unknown third party, was traveling northbound on I-240 in the same area when he swerved off the roadway and rear-ended [Mr. Wright's] vehicle.
> 10. John Doe swerved from either the middle lane or the far left lane before striking [Mr. Wright's] vehicle, crossing 2–3 lanes of traffic.
> 11. The northbound lanes are flat and straight with no permanent obstructions.

Accordingly, the trial court concluded that

> [Mr. Wright] and Travelers did not respond to the motion for summary judgment with evidence of what John Doe did or did not do that would allow a jury to make a finding that more likely than not, the defendant towing truck was the cause in fact of John Doe's actions beyond mere conjecture and speculation and purely guessing what John Doe was doing or attempting to do. [Mr. Wright and Travelers] do not have evidence to establish that John Doe veered into [Mr. Wright's] vehicle but for [Appellees'] conduct.

On January 3, 2023, Mr. Wright and Travelers filed a joint motion to certify the trial court's order granting summary judgment as final pursuant to Tennessee Rule of Civil Procedure 54.02, or, in the alternative, for permission to file an interlocutory appeal. Instead of an order designating the grant of summary judgment as to Appellees as final, a notice and order of voluntary nonsuit in relation to John Doe and Travelers was

---

[1] As to two facts put forth by Appellees, Mr. Wright included additional information after admitting the fact itself was undisputed.

subsequently entered by the trial court on January 9, 2023. Mr. Wright and Travelers (together, "Appellants") filed a joint notice of appeal on January 13, 2023.

## II. STANDARD OF REVIEW

The question before us on appeal is whether the trial court erred in granting summary judgment to Appellees. We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the non-moving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the non-moving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Brooks Cotton Co. v. Williams*, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (alteration in original) (quoting *Landry v. S. Cumberland Amoco*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

## III. ANALYSIS

On appeal, Appellants argue that it was an error for the trial court to summarily dismiss the claims against Appellees. In doing so, the trial court found that Appellees had demonstrated that Mr. Wright's evidence was insufficient to establish an essential element of each of these claims. We begin, therefore, with a brief review of the necessary elements of negligence, negligence per se, and negligent hiring, supervision, and training claims.

Negligence involves "the failure to exercise reasonable care." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). To establish a claim for common law negligence, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Id.* (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

Mr. Wright's other claims also originate in allegations of negligence. A negligence per se claim is "a form of ordinary negligence that enables the courts to use a penal statute to define a reasonably prudent person's standard of care." *Rains v. Bend of the River*, 124 S.W.3d 580, 589 (Tenn. Ct. App. 2003) (citations omitted). Although "[t]he effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law[,] . . . [p]laintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages." *Id.* at 590 (citations omitted). Similarly, to hold an employer liable for the negligent hiring, supervision, or retention of an employee, a plaintiff must establish (1) "the elements of a negligence claim" and (2) "that the employer had knowledge of the employee's unfitness for the job." *Gunter v. Est. of Armstrong*, 600 S.W.3d 916, 928 (Tenn. Ct. App. 2019) (quoting *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)). Thus, all three of the claims require proof of both causation in fact and proximate cause.

Causation in fact involves "the cause and effect relationship between the tortious conduct and the injury." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). A plaintiff must show that the defendant's negligent conduct "more likely than not caused the injury." *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 852 (Tenn. 2017) (citing *Kilpatrick*, 868 S.W.2d at 598–99;). In other words, the plaintiff must establish that "the injury would not have occurred but for the defendant's conduct." *Id.* (citing *King*, 419 S.W.3d at 246). In the medical malpractice context, our Supreme Court has held that "proof of causation equating to a 'possibility,' a 'might have,' 'may have,' 'could have,' is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence[.]" *Kilpatrick*, 868 S.W.2d at 602. Indeed, "causation in fact is a matter of probability, not possibility[.]" *Id.* (citation omitted); *see also Jenkins*, 515 S.W.3d at 851–52 ("It is not enough for a plaintiff to show that a defendant's conduct was a *possible* cause of the injury; the defendant's conduct must be shown to be the *probable* cause." (emphasis added) (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861–62 (Tenn. 1985))).

On the other hand, "[t]he doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." *Kilpatrick*, 868 S.W.2d at 598 (quoting Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353, 1355 n.7 (1981)). "Proximate cause thus focuses on the nature and extent of the connection between a defendant's unreasonable conduct and the plaintiff's injury[,]" cutting off liability "at the point where the harm that resulted from the defendant's negligence is so clearly outside the risks created that it would be unjust or at least impractical to impose liability." W. Jonathan Cardi, *Purging Foreseeability the New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L. Rev. 739, 747 (2005) (internal quotation marks and citations omitted); *see also King*, 419 S.W.3d at 247 (noting the three elements of proximate cause, including that "the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of" (quoting *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005))).

"Both causation in fact and proximate cause must be proven by the plaintiff by a preponderance of the evidence." *King*, 419 S.W.3d at 246 (citing *Kilpatrick*, 868 S.W.2d at 598). And as "the mere occurrence of an injury does not prove negligence," *Kilpatrick*, 868 S.W.2d at 599, "[p]roof of negligence is not a substitute for evidence of causation." *Jenkins*, 515 S.W.3d at 852; *see also Doe v. Linder Const. Co.*, 845 S.W.2d 173 (Tenn. 1992) ("Proof of negligence without proof of causation is nothing" (citation omitted)). "Though questions regarding . . . causation are ordinarily questions of fact for the jury, 'these questions may be decided at the summary judgment stage if the evidence is uncontroverted and if the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion.'" *Jones v. Ray*, No. M2004-02629-COA-R3-CV, 2005 WL 3416296, at *1 (Tenn. Ct. App. Dec. 13, 2005) (quoting *Rains*, 124 S.W.3d at 588).

The trial court found that Appellees had successfully demonstrated that Mr. Wright's evidence was insufficient to establish that the positioning of the tow truck was the cause in fact of his injuries. Appellants argue that the evidence in the record—excerpts from the depositions of Mr. Wright, Wright, Jr., and Ms. Rust—creates a genuine dispute of material fact to be presented to a jury.

From our review, there is testimony regarding the effect of the tow truck on traffic generally. Indeed, Mr. Wright explained that:

The fact [was] that the tow truck . . . was blocking the outside lane. People that came over that hill had to jockey for a position and it was . . . somewhat like a parking lot because they were 18 wheelers. They were -- I mean, everybody was having to slow down because that lane is closed so everybody

that comes over the hill, they've got to get into the other two lanes, or in John Doe's case, the emergency lane. So, there were vehicles everywhere.

Wright, Jr.'s description of the situation was that: "Traffic was messed up in that lane. Like I said, nothing -- 90 percent of traffic would not pass that tow truck. Everything was moving over to the middle lane if not stopping in that lane nearest us and then moving over." Especially when combined with Appellees' concession for purposes of summary judgment that the location of the tow truck created a "dangerous condition," this testimony clearly goes toward establishing a breach of duty by Appellees, one element of Mr. Wright's claims. *But see **Kilpatrick***, 868 S.W.2d at 599 (noting that "an admittedly negligent act does not necessarily entail liability").

However, the testimony as to the effect of the tow truck on John Doe, specifically, is significantly less clear-cut. Appellants rely most heavily on Ms. Rust's testimony to establish a causal relationship between the position of the tow truck and John Doe's actions. Yet, after being asked when she first saw John Doe's vehicle, Ms. Rust stated:

> When [he] was trying to -- I don't know what [he] was trying to do, if he got cut off. I'm not sure what he was trying to do, but [the vehicle] was coming from the middle lane to the lane next to us and then hit [Wright, Jr.'s] dad from the back, in the back, and then acted like he was going to stop and then drove off.

When asked if another car was in front of John Doe on the interstate prior to the accident, Ms. Rust explained that: "I mean there was a lot of traffic at that time. You know, at the time there was cars in both lanes, so I'm assuming that's why [John Doe] went off the road, was to avoid -- you know, it got kind of clustered right there, you know." Then, when Ms. Rust was asked if she knew "specifically what caused [John Doe] to cross multiple lanes and leave the roadway[,]" the following exchange occurred:

> A. This got to be really congested. I mean cars were trying to get out of the lane closest to me to get out of the way, so I mean cars were -- it looked like it was getting dangerous.
> Q. Right. Did you see specifically something that caused [John Doe] to leave the middle lane?
> A. The cars in front of him trying to figure out where they were going, so maybe to avoid hitting a car that was in front of him.
> Q. What I'm interested in finding out is what specifically you saw. So did you see specifically another car interfering with the forward progress of [John Doe] or forcing [him] off the road?
> A. I saw lots of cars that were having to avoid hitting one another because they were moving in different directions trying to -- like I said, that had

gotten -- traffic had gotten pretty heavy. So yeah, it seemed to me as if he was trying to avoid hitting another vehicle.

But as to the car John Doe was attempting to avoid, Ms. Rust had "no idea what it looked like. There were lots of vehicles that were trying to avoid hitting each other at this particular time." Ms. Rust also did not know which lane this other vehicle was in.

When asked to "identify what specifically happened" with the other vehicle, Ms. Rust stated:

It just seemed like to me -- my impression was there was a car in front of [John Doe] that he was trying to avoid, so he got from -- the lane that I thought he was in originally was the middle lane. And when he got into the middle lane, there was cars in front of him swapping lanes also and slamming on their brakes, and then he didn't have anywhere else to go. So maybe if he got off on the shoulder, he could avoid hitting the cars that were braking in front of him.

When asked if "the position of the tow truck . . . caused [John Doe] to come across four lanes and strike" Mr. Wright's vehicle, Wright, Jr. explained: "No. I believe . . . the position of the tow truck created a disruption in traffic . . . . The disruption in traffic by the tow truck created him to make a maneuver." Regarding John Doe's behavior, Wright, Jr. had the following exchange:

Q. And you're saying that [John Doe] was in the third or the far-left lane?
A. Yes, sir. Yes, sir. Yes, sir.
Q. And he came all the way over --
A. Yes, sir.
Q: -- from the left lane to hit your dad?
A. Yes, sir. Yes, sir. That's what I say, when his brakes locked up, it was like there was so much time from me hearing his brakes locked up, because traffic started -- when people started seeing him [Mr. Valenzuela], this lane started shooting over to the left, and people were stopping on this lane just like literally completely stopping to get over to clear him, and I don't know why this guy [John Doe] did what he did, but his brakes locked up so far away, and we watched it happen.

Later, Wright, Jr. went on to say:

I believe his decision was a clear lane of traffic. And then when -- again, the gentleman was older. Once he noticed, after he initially was taking an angled shot into a clear lane of traffic, okay, he seen a tow truck in traffic and just

kept correcting going the position he was going, and my dad just happened to be in the way.

. . . .

I believe he had control [of his truck] and his decision was altered because of a, you know, truck in the way. I believe he saw a lane clear, was making an adjustment from the far left to the far right, which was going over one lane of traffic at the time, which doesn't seem that bad, and then he saw, you know, something in the way and kept merging over to get, you know, out of the way of the semi truck.

. . . .

My opinion is the reason the brakes were locked up was, again, because traffic was interrupted and he thought he -- I'm sure people stopping dead stopped over here in the far right and then merging over in the middle, I'm sure that created a disruption through all lanes. I mean that's obvious. I mean humans panic on the interstate. Might have saw brake lights in his lane, locked them up, thought he was getting closer than what he was, went over to the middle, saw a clear lane in the right, jumped over to the right. I'd hit my dad before I hit a semi truck. You know, didn't want to hit the truck, so he kept going over.

Respectfully, this testimony constitutes more of the witnesses' theory of events than their direct perception of the events that took place. Although they do not agree on which lane John Doe was in originally, both Ms. Rust and Wright, Jr. posit that John Doe's initial movement was toward the right-hand side of the interstate, i.e., toward the tow truck and the congestion they assert it created, rather than away. As such, the witnesses begin their narrative with the assumption that the positioning of the tow truck caused John Doe to move in the direction of the obstruction. Moreover, Ms. Rust admits that she does not know what John Doe was attempting to do prior to hitting Mr. Wright's vehicle, that she is assuming John Doe left the roadway to avoid hitting another vehicle that she cannot describe, and that this theory is merely her impression of the events prior to the accident. Wright, Jr.'s testimony is replete with expressions that his testimony is of his beliefs and opinions, and he admits that he does not know why John Doe acted the way he did beyond statements of "obvious" reactions to scenarios John Doe might have been presented with. This sort of conjecture is simply not enough to establish causation by a preponderance of the evidence.

Of course, that is not to say that circumstantial evidence may not support a finding of fact. In **Hindman v. Doe**, this Court affirmed a jury award even though it expressly found the evidence of causation to be "largely circumstantial." 241 S.W.3d 464, 468 (Tenn. Ct. App. 2007). There, the plaintiff's vehicle entered a ditch and flipped over after striking a large rock in the roadway. *Id.* at 466. Multiple witnesses provided testimony that there was a disabled dump truck filled with rock and dirt on the side of the road near the accident site in the week prior to the accident, that a pile of dirt and rock had been dumped out and

was laying under the truck the day prior to the accident, and that there was a pile of dirt and large rocks next to the roadway near the accident site the day prior to the accident. *Id.* at 469. There was also expert testimony explaining how rocks could have rolled off the pile of dirt into the road. Together, this was enough to establish "a chain of events between the negligent actions of the unknown motorist—the operator of the [] dump truck—and the accident." Therefore, the defendant unknown motorist insurance carrier's argument that the evidence was too speculative to support the jury's verdict for the plaintiff was unsuccessful. *Id.* at 470.

Similarly, in ***Fruge v. Doe***, our Supreme Court found sufficient evidence of causation to present the matter to the jury. 952 S.W.2d 408 (Tenn. 1997). The plaintiffs attempted to avoid a disabled vehicle left in their lane of traffic and instead struck the retaining wall. *Id.* at 409. The responding police officer's report explained that although the abandoned vehicle was not struck, there were multiple accidents in the immediate area, such that "the probable source of the resulting collisions" was the vehicle blocking the roadway. *Id.* at 410. Thus, a jury "could find on the evidence in the record and on the reasonable inferences that could be drawn therefrom that . . . the unknown motorist caused the accident[,]" and the trial court's grant of summary judgment was reversed. *Id.* at 412.

However, the testimony as to causation in this case is decidedly less definite than that in ***Hindman*** and ***Fruge***. Those cases included evidence that both closely linked the alleged negligence of the defendant to the injury suffered by the plaintiff and clearly negated the possibility of other potential causes. In our view, the evidence here instead more closely resembles that presented in ***Jenkins v. Big City Remodeling***.

In ***Jenkins***, the plaintiffs argued that their partially-completed house was destroyed by a fire on their back deck as a result of negligence by flooring subcontractors. 515 S.W.3d at 845. In their motion for summary judgment, the subcontractors relied on deposition testimony and statements from the plaintiffs' expert witnesses that the cause of the fire could not be determined and that arson and other possible causes of the fire including improperly discarded cigarettes, electrical issues, and spontaneous combustion of rags could not be ruled out. *Id.* at 846. The plaintiffs' evidence included that the subcontractor and his crew handled flammable substances and smoked cigarettes in the garage, smoked cigarettes near the back deck, and were the last people in the house prior to the fire. Additionally, there was testimony that the rags used by the subcontractors may have caused the fire if not properly disposed of, and an arsonist would likely have been seen on a neighbor's surveillance camera. *Id.*

Our Supreme Court affirmed the grant of summary judgment after finding that the plaintiffs failed to produce sufficient evidence of causation in fact. *Id.* at 852–53. Specifically, it found that the "expert witnesses could not rule out arson as a cause of the fire and were not able to identify a possible cause for the fire that was more likely than any other cause." *Id.* at 852. Thus, the "subcontractors *may* have been negligent by improperly

-10-

discarding cigarettes or by disposing of rags in the garage area, but the plaintiffs were not able to link these alleged acts to the fire that started on the back deck." *Id.* As such, the plaintiffs were unable to "produce evidence that any negligent conduct by the subcontractors was the cause in fact of the fire[,]" and the defendant subcontractors were entitled to judgment as a matter of law. *Id.* at 853.

We likewise found the evidence too speculative to avoid summary judgment in *Jones*, 2005 WL 3416296. There, the plaintiff passenger alleged that the defendant motorcycle driver negligently failed to pay adequate attention to be able to avoid a collision with a deer, thus breaching his duty of care. *Id.* at *1. In opposition to the motion for summary judgment, the passenger highlighted that there were no obstructions to the driver's vision on the relevant portion of the roadway and that the deer would have had to cross 100 feet of clear area before reaching the motorcycle. She argued that these facts supported the inference that if the driver had been properly paying attention, he could have avoided the accident. *Id.* at *2. But, as "there [was] no evidence of where the deer came from, how it got there, and hence, whether it was ever in the defendant driver's reasonable line of sight[,]" we did not agree that such an inference was possible without requiring that the jury first speculate as to the deer's whereabouts prior to hitting the motorcycle. And simply put, "[s]uch speculation by the jury is not permissible." *Id.*; *see also* ***Owings v. Owings***, 661 S.W.3d 141, 149 (Tenn. Ct. App. 2022) (affirming summary judgment based on lack of proof of breach where plaintiff passenger's deposition testimony was that defendant driver hit multiple parked cars after swerving to avoid hitting an animal in the roadway, noting that "[t]he problem with Plaintiff's argument [that this was a negligent act] is that it is based entirely on speculation and points to no facts demonstrating that Defendant's actions were negligent except that an accident occurred and that Defendant was driving" (quoting *Jones*, 2005 WL 3416296, at *3)), *perm. app. denied* (Jan. 11, 2023).

Like in *Jones*, the testimony here requires a two-step analysis to connect the conduct of Appellees to Mr. Wright's injuries. The witnesses do not state that the tow truck alone caused John Doe to hit Mr. Wright's vehicle on the shoulder. Instead, they explain that the tow truck created congestion that in turn caused John Doe to head toward the obstacle in the right-hand lane, leave the roadway, and strike Mr. Wright's vehicle. But even when we take the evidence in the light most favorable to Mr. Wright and accept *arguendo* that the tow truck caused congestion, we simply do not know "where [John Doe] came from, how [he] got there," *Jones*, 2005 WL 3416296, at *1, and hence, whether his conduct stemmed from the location of the tow truck, or even from the congestion allegedly created by the location of the tow truck. Thus, like in *Jenkins*, Appellants have failed to establish that Appellees' conduct was more likely than not the cause of John Doe entering the shoulder and striking Mr. Wright's vehicle.

Because the evidence linking the accident to the tow truck's position is so tenuous, particularly given that the undisputed facts establish that John Doe's actions involved him moving toward the obstruction, rather than away from it, Mr. Wright's proof does little to

-11-

eliminate the possibility that other factors were the cause of John Doe's decision to cross at least one lane of traffic. And as Appellees pointed out at the summary judgment hearing, there are other reasonable explanations for John Doe's behavior: "Maybe it was a bee that was in the car. Maybe he was on the phone with someone. Maybe he was high. Maybe he was drunk. Maybe he was just going too fast[.]" The narrative the witnesses have created, in which John Doe crossed at least one lane of traffic and then left the roadway to avoid hitting another vehicle as a result of congestion caused by the positioning of the tow truck, while plausible, is no more likely than these other possible rationales. In other words, Mr. Wright has not only failed to establish that the tow truck's position and any congestion it caused was a probable cause of the accident, *Jenkins*, 515 S.W.3d at 851–52, or even a substantial factor in the collision, *see King*, 419 S.W.3d at 247, he has failed to connect the positioning of the tow truck to his injuries in any fashion.

In sum, even if the positioning of the tow truck caused a dangerous condition and therefore constituted a negligent act, the testimony in the record did not prove that this condition was the probable cause of the accident rather than simply a possible cause. *Jenkins*, 515 S.W.3d at 851–52. Testimony amounting to "a 'possibility,' a 'might have,' 'may have,' 'could have,' is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence[.]" *Kilpatrick*, 868 S.W.2d at 602. Thus, Appellees have successfully "demonstrate[ed] that the nonmoving party's evidence *at the summary judgment stage* [was] insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Mr. Wright did not effectively show that a genuine dispute remained for trial; because he was unable to negate other potential causes of John Doe's actions, no reasonable jury could have found, without speculating, that the positioning of the tow truck more likely than not caused John Doe to cross at least one lane of traffic, leave the roadway, and hit Mr. Wright's vehicle. As Mr. Wright could not prove the cause in fact element of his claims, Appellees were entitled to a judgment as a matter of law. *See Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 259 (Tenn. 2010) ("No claim for negligence can succeed in the absence of any one of [the common law] elements." (quoting *Kelley v. Middle Tenn. Emergency Physicians*, 133 S.W.3d 587, 592 (Tenn. 2004))); *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 772 (Tenn. 2006) (finding no proximate cause and then stating that "[a]s a result of our holding on this element, we need not discuss duty of care or any other elements of the negligence action"). The trial court's grant of summary judgment is therefore affirmed.

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this matter is remanded to the trial court for any proceedings necessary and consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Kerry Wright and one-half to Appellant Travelers Insurance Company, for which execution may issue if necessary.

_s/ J. Steven Stafford_
J. STEVEN STAFFORD, JUDGE